[Civ. No. 11370. Second Appellate District, Division One.—December 24, 1937.]

JAMES H. WALSH, Respondent, v. HARVEY M. PARKER, Administrator, etc., Appellant.

Merriam, Rinehart & Merriam for Appellant.

Ticknor & Maxwell and Roland Maxwell for Respondent.

THE COURT.—This is an appeal by the administrator of the estate of Mary Ann Tarbell from a judgment rendered against him in an action upon a rejected claim against the estate.

It was alleged in the complaint that for a period of six years prior to September 8, 1933, and for over a year thereafter, the plaintiff rendered services to the decedent, "staying with her at nights, attending to her wants, driving her and

otherwise assisting and caring for her'', for which services decedent promised to pay plaintiff $2,000 per year plus interest at five per cent; that about September 8, 1933, decedent executed a ''memorandum of said agreement'', which is as follows:

"Sep 8, 1933

''James Walsh has worked for me for the past six years staying in with nights and attending to me. Driving me evenings where I wanted to go. Also most every Sunday. I agreed to pay him $2000 Two Thousand a year plus intrist at the rate of 5%. This to be paid from my estate after my death.

''This I fully understand and order that James H. Walsh be paid $2000 a year for his services for the past six years and at the same rate as long as he shall continue in my service.

''this is my wishes

''MARY A. TARBELL.''

At the trial of the action, plaintiff made *prima facie* proof of the execution of the document (it appearing that the body of the instrument was in the handwriting of the plaintiff and that the words ''this is my wishes Mary A. Tarbell'' were in the handwriting of the decedent), and also offered some slight evidence of ''services'' rendered decedent by him subsequent to September 8, 1933, which evidence consisted of the testimony of witnesses to the effect that the plaintiff lived in the home of Mrs. Tarbell; that he was seen, ''occasionally'', or ''frequently'', driving her in her automobile; that he worked as a gardener, not for Mrs. Tarbell. A motion for nonsuit was denied.

From the evidence of the defendant, it appeared that the plaintiff, a man about forty years of age, had lived at the home of Mrs. Tarbell since about 1927, but paid nothing for his room or board during this period. Mrs. Tarbell was eighty-four years old and subject to the infirmities of age. She suffered from a complication of ailments, arterio-sclerosis, senile dementia, gall bladder and stomach trouble. In April, 1933, she made a holographic will leaving her entire estate to the plaintiff. This will was found in plaintiff's possession. A month later she made another will, omitting mention of plaintiff. There were produced as exhibits blank sheets of paper bearing her signature. She habitually left such papers

lying about the house. Her attitude toward the plaintiff would vary from anger and abuse to fond affection. She would chase him from the house, board up the windows and hide his bedclothes; but in a day or two she would readmit him. She frequently threatened him with a hammer which she kept under her pillow. At other times she seriously considered marrying him. After her death a number of promissory notes, payable to her and signed by the plaintiff, were found among her effects. The trial court found, among other things, that on September 8, 1933, Mrs. Tarbell "was in a state of mental weakness and was subject to delusions or hallucinations, and although on said date the mental faculties of the said Mary Ann Tarbell were somewhat impaired; nevertheless said agreement was not signed by reason of any weakness of mind or lack of mental capacity upon the part of the said Mary Ann Tarbell, and the said Mary Ann Tarbell was able to and did understand the nature, purpose and effect of said agreement at the time of the execution thereof by her''. This finding represents the choice of the trial court between the conflicting inferences which might be drawn from the foregoing evidence and other evidence to the effect that the decedent was well able to manage her own affairs. In such circumstances, it may not be disturbed by this court.

The judgment must be reversed, however, upon another point made by appellant. The position which was taken by the plaintiff on the trial, adopted by the trial judge, and urged by respondent in this court, is that the instrument in question constituted an account stated, and that, as was said in *Gardner* v. *Watson*, 170 Cal. 570 [150 Pac. 994], all "evidence going to a total or partial lack of consideration is forever debarred by the convention and agreement of the parties, for this is of the very essence of an account stated''. Upon this theory, the trial court refused to admit evidence offered by defendant as to the nature of the services rendered by plaintiff during the period prior to the execution of the document, and rejected defendant's offer to prove by such evidence a total failure of consideration. Despite this ruling, however, as the trial progressed, evidence was offered by defendant and received to the effect that the "services" rendered by plaintiff to Mary Ann Tarbell prior to the execution of the document amounted to no more than reading to

her a few evenings each week, occasionally taking her on automobile rides on Sundays or evenings, in her car; and sometimes performing some minor household task or errand; that prior to his death the son of decedent did all these things; that after her son's death, decedent's half-brother called daily at the house, drove her in her car, and assisted in the management of her estate. This evidence was admitted solely as bearing on the issues of want of capacity of decedent and undue influence by plaintiff. Appellant contends that this and other rejected evidence of similar import should have been received and considered on the defense of want of consideration, and also, since the execution of the document was denied in the answer, as bearing on the probability of decedent's having signed it.

While the offers of proof were not as clear or definite as they might have been, the evidence admitted, as well as that offered (which it would unduly prolong this opinion to set out in further detail than as hereinbefore stated), presents a situation where, far from being her creditor, the plaintiff appeared to be considerably indebted to decedent, not only for board and room, but for money lent; and the "services" appeared to be so trifling as to constitute no consideration at all, aside from their being of the nature which ordinarily, between such good friends as plaintiff and decedent, are rendered with no thought of compensation. This, indeed, was the view taken of the alleged services by the trial court, for it denied recovery for services claimed to have been rendered after the execution of the instrument (the proof thereof being very slight) and observed that plaintiff apparently rendered no more "services" to decedent before the execution of the document than he did afterward. It is apparent, therefore, that in arriving at a decision in favor of plaintiff as to services rendered prior to the signing of the agreement, the trial court rigidly excluded as a factor in its determination, the amount, nature or value of such services. In this, we think, the court erred.

The plaintiff did not plead or prove, nor does the writing on its face purport to be, an account stated. Plaintiff alleged in his complaint the making of an oral agreement of employment and the subsequent execution of a written memorandum thereof. In presenting his case, he proved only the execution of the writing. No antecedent debts or disputed

228

claims, or the compromise or adjustment thereof, were shown to have existed. In *Gardner* v. *Watson,* 170 Cal. 570, at 574 [150 Pac. 994], it is said:

"Over what in law constitutes an account stated there was never any question in this state, and very little uncertainty exists in other states. 'It must appear' (says this court in *Baird* v. *Crank,* 98 Cal. 293, 297 [33 Pac. 63]) 'that at the time of the accounting certain claims existed, of and concerning which an account was stated; that a balance was then struck and agreed upon, and that the defendant expressly admitted that a certain sum was then due from him as a debt'. To like effect is *Coffee* v. *Williams,* 103 Cal. 550, 556 [37 Pac. 504], where it is said: 'An account stated is a document—a writing—which exhibits the state of account between parties and the balance owing from one to the other, and when assented to, either expressly or impliedly, it becomes a new contract. An action on it is not founded upon the original items, but upon the balance agreed to by the parties. . . .' It is not at all necessary that there should be mutual or cross-accounts or demands between the parties. The acknowledgment of a debt, though it consists of but a single item, may form the basis of such a stated account. . . . Moreover, the writing constituting an account stated need not aver or at all contain the grounds and reasons for the conclusion and declaration expressed. It is a complete account stated if it contains a signed and written acknowledgment of a present, unqualified indebtedness or liability with a promise to pay a named sum. . . . "

Applying most liberally the foregoing language to the instrument here presented, we cannot see that it constitutes an account stated. The writing merely confirms the alleged previous agreement. It takes no cognizance of the outstanding indebtedness of plaintiff to decedent, represented by a series of promissory notes. It is merely evidence of an agreement. Only when the account stated is clear and complete and the execution thereof is admitted, is the restriction contended for by respondent applicable. "And the general rule is that when the stated account *is admitted,* it can be avoided only by averments and proof of fraud, mistake, etc." (*Gardner* v. *Watson, supra; Coffee* v. *Williams, supra.*) "Where the account sued upon is a defective memorandum of account, without dates, or any balance struck or stated, *and*

*the answer denies that any account was stated,* the court should allow great latitude in introducing evidence to disprove it; . . . '' (*Coffee* v. *Williams, supra;* italics added.)

The document here presented is not an ''acknowledgment of a present unqualified indebtedness or liability with a promise to pay a named sum'' (*Gardner* v. *Watson, supra*); but ought to be classed with the type of instrument considered in *Herbert* v. *Lankershim,* 9 Cal. (2d) 409 [71 Pac. (2d) 220], where a claimant presented a promissory note for $500,000, payable ''one month after my death, from my estate or my trust fund, for her loving kindness and protection to me''. Of this instrument, the Supreme Court said: ''If the note was intended as a gift payable after death, then, of course, it did not create an enforceable legal obligation. . . . The note can be upheld, if at all, only as a contract. This is conceded. As a contract, to be enforceable, it must, of course, be supported by a valid consideration. This consideration must be either past or present.''

In the case before us, there was no evidence offered by plaintiff of an antecedent agreement, except the recital in the instrument, ''I agreed to pay him,'' etc. And from the evidence, a conclusion that there had been no such antecedent oral agreement would have been well founded. The evidence which defendant sought to introduce as to the character of the services was pertinent and germane to the issue of whether there was or was not an antecedent agreement, and might well have been the deciding factor, had it been admitted. As has been said, the court held that plaintiff had failed to prove the rendition of services of any value subsequent to the execution of the agreement. The language of the Supreme Court in *Herbert* v. *Lankershim, supra,* is again applicable:

''As part of her case respondent offered evidence tending to prove various services intermittently rendered by her, and the length of time over which the services were rendered. According to the evidence produced by her, all of the services were rendered and completed prior to the date of the execution of the note. There is not one word of evidence that services of any kind were rendered after that date. If the note was intended as compensation for the services already rendered, then the provisions of section 1606 of the Civil Code are applicable, and this is so whether the obligation

to pay for these past services was either a moral or a legal obligation. That section provides: 'An existing legal obligation resting upon the promisor, or a moral obligation originating in some benefit conferred upon the promisor, or prejudice suffered by the promisee, is also a good consideration for a promise, *to an extent corresponding with the extent of the obligation, but no further or otherwise.*' (Italics supplied.)

"It must be admitted that, under this theory, at the time the note was executed the 'extent of the obligation' existing against Colonel Lankershim, legally or morally, was to pay for the reasonable value of the services rendered. If this analysis is correct, then the only consideration that can support the document sued upon was this prior obligation, and it can support the document only to the 'extent of the obligation, but no further or otherwise'. The appellants sought to introduce evidence as to the reasonable value of the services, but this evidence was excluded. The jury was specifically instructed that the respondent, if entitled to recover at all, was entitled to recover the full $500,000. The defendants offered several instructions to the effect that if the jury should find the consideration for the note was past consideration, then the plaintiff was limited in her recovery to the reasonable value of her services. These instructions were refused. This was error of a prejudicial nature. Certainly from the evidence introduced, the jury, if it found services were in fact rendered, could have found that the services already rendered when the note was executed were the sole consideration for the note. The jury should have been instructed that, in the event it so found, recovery was limited to the extent of the existing obligation as defined in section 1606 of the Civil Code. (*Lagomarsino* v. *Giannini,* 146 Cal. 545 [80 Pac. 698]; *Estate of McConnell,* 6 Cal. (2d) 493 [58 Pac. (2d) 639]; *Moore & Co.* v. *O'Grady,* 9 Cal. App. (2d) 695 [50 Pac. (2d) 847].)"

This reasoning is applicable to the instant situation. While an account stated might well arise out of an understanding as to the value of services rendered, the situation here disclosed by the evidence, despite the trial judge's finding that the instrument was not obtained through undue influence, calls for a more rigid scrutiny than would be the case between parties dealing at arm's length. Considering

the informal nature of the document and the circumstances under which it was prepared and executed, a court should not stultify itself by adhering to a consideration thereof which has been applied to instruments drawn with reference to ordinary commercial transactions, and to which it bears only a superficial resemblance, for such construction may compel, as we think it did here, an unjust result. The instrument here, in substance, and viewed in the light of the circumstances surrounding its execution, is a promise to pay for past services after the death of the decedent; and the true value of such services may therefore be shown.

For the reason that the trial court erred in rejecting evidence of the true value of plaintiff's services rendered before the execution of the document sued upon, not only as affecting the probability of decedent's having executed the same, but also as affecting the amount which plaintiff was entitled to recover, the judgment is reversed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 21, 1938, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 21, 1938.