[Civ. No. 12050. Second Appellate District, Division One.—November 8, 1940.]

JAMES H. WALSH, Respondent, v. HARVEY M. PARKER, as Administrator, etc., Appellant.

Merriam, Rinehart & Merriam for Appellant.

Ticknor & Maxwell and Roland Maxwell for Respondent.

YORK, P. J.—Respondent brought the instant action against appellant administrator upon a rejected claim against the estate of Mary Ann Tarbell, deceased, for services alleged to have been rendered by him during the life of said decedent, his claim being based upon the following memorandum:

"Sep. 8, 1933

"James H. Walsh has worked for me for the past six years staying in with nights and attending to me. Driving me evenings where I wanted to go, also most every Sunday. I agreed to pay him $2000 Two Thousand a year plus interest at the rate of 5%. This to be paid from my estate after my death.

"This I fully understand and order that James H. Walsh be paid $2000 a year for his services for the past six years and at the same rate as long as he shall continue in my service.

"this is my wishes.

"MARY A. TARBELL"

This is the second appeal taken by administrator in this cause. In the first trial, the court adopted respondent's theory that the instrument sued upon was an account stated, and accordingly refused to admit evidence offered by administrator as to the nature of the services rendered during the period prior to the execution of the document, and rejected administrator's offer to prove by such evidence a total failure of consideration. A judgment against administrator for $12,000 and interest was reversed upon the first appeal, this court holding that the document sued upon did not constitute an account stated, but was merely a promise to pay for past services after decedent's death, and that "the trial court erred in rejecting evidence of the true value of plaintiff's services rendered before the execution of the document sued upon, not only as affecting the probability of decedent's having executed the same, but also as affecting the amount which plaintiff was entitled to recover". (*Walsh* v. *Parker,* 24 Cal. App. (2d) 224, 231 [74 Pac. (2d) 531].)

At the opening of the second trial, the respondent was permitted over the objection of appellant to file a second amended complaint setting forth three distinct causes of action:

The first alleged "that during the period of six years prior to September 8, 1933, plaintiff worked for the said Mary A. Tarbell, staying in with her at nights, attending to her, driving her during evenings and when otherwise requested, as

well as on Sundays; that said services were rendered by plaintiff for the said Mary Ann Tarbell at her request and upon oral agreement that the services rendered by plaintiff to said deceased as such personal attendant, for her comfort and welfare, should be compensated for in such a manner as would be mutually agreed upon by the parties at some future date; that said services continued during said entire period of six years at such times and places as were requested of plaintiff by said deceased; that on or about the 8th day of September, 1933, pursuant to said agreement and in fulfillment thereof, the deceased made, executed and delivered to plaintiff'' the instrument hereinbefore quoted in full, and ''that plaintiff then and there accepted said written instrument in fulfillment of said agreement and in full compensation for any and all services theretofore rendered for her by plaintiff, and that said parties then and there mutually agreed to the amount and manner of such payment, as set forth in said writing''.

The second cause of action realleged the foregoing by reference and in addition alleged that the deceased for a valuable consideration made, executed and delivered to plaintiff the instrument of September 8, 1933.

The third cause of action recast the allegations of the first but in slightly different form, and in addition alleged that on or about the 8th day of September, 1933, plaintiff and decedent determined and agreed upon the amount of said compensation and stated an account between themselves by the execution and delivery of the instrument of September 8, 1933.

The answer to the amended complaint which by stipulation was deemed to be the answer to the second amended complaint, denied the execution of the instrument for want of information and belief, and set up separate defenses that it was obtained through undue influence, that the decedent on the date of the execution of the alleged instrument was unable to understand its nature, purpose or effect, and that it was not supported by a sufficient consideration.

At the conclusion of the instant trial, the jury brought in a verdict in favor of respondent for the sum of $12,000 with interest. From the judgment which was thereafter entered, administrator prosecutes this appeal, contending (1) that the evidence as a matter of law is not sufficient to support the

judgment; (2) that under the law of the case as laid down in the decision of this court upon the former appeal, the trial judge should have granted appellant's motion for a directed verdict as to each cause of action set forth in the complaint; (3) that the trial court erred in permitting the filing of the second amended complaint and in the exclusion and admission of evidence; (4) that the trial court gave erroneous and conflicting instructions to the jury; (5) that the verdict of the jury was excessive.

In connection with his first point, appellant points out that "the instrument of September 8, 1933, was by its terms intended to fix plaintiff's compensation for his services already rendered. Therefore, the provisions of section 1606 of the Civil Code are applicable, whether the obligation to pay for the past services was either a moral or a legal obligation. That section provides:

" 'An existing legal obligation resting upon the promisor, or a moral obligation originating in some benefit conferred upon the promisor, or prejudice suffered by the promisee, is a good consideration for a promise, *to an extent corresponding with the extent of the obligation, but no further or otherwise.*' (Italics supplied.)

"At the time the instrument was executed, the 'extent of the obligation' existing against the decedent, legally or morally, was to pay for the reasonable value of the services rendered. The only consideration that can support the instrument was this prior obligation, and it can support the instrument only to the 'extent of the obligation, but no further or otherwise'. (*Herbert* v. *Lankershim*, 9 Cal. (2d) 409, 477 [71 Pac. (2d) 220].)"

In answer, respondent urges that "since the basis for this suit is a written agreement 'a good and sufficient consideration' is presumed (Code Civ. Proc., sec. 1963, subd. 39.) The authenticity of the written document is established without conflict. . . . This fact places the present case on an entirely different footing from the case of *Herbert* v. *Lankershim.*"

We summarize briefly the evidence offered upon the issue of consideration in support of the instrument here involved, as well as upon the question of the services rendered by respondent:

From the testimony of relatives, friends and employees of Mrs. Tarbell produced on behalf of appellant administrator,

it appeared that on September 8, 1933, the day the instrument in question was executed, Mrs. Tarbell was about eighty-five years old and subject to the infirmities of age.

The respondent, a man about forty years old, had lived in Mrs. Tarbell's home for a period of six years, or from 1927, and although he worked as a gardener at a neighboring estate and was customarily away during the working hours of the day, he was usually at home in the evening at which time he did little or no work around the house, read to Mrs. Tarbell and occasionally took her for an automobile ride; when she felt ill he attended to her wants, and on Sundays he took her riding. In Mrs. Tarbell's home also lived her nephew, aged twenty-seven years, and until his death in October, 1930, her son Charles Sawdey, then aged fifty-seven years. Her son had no occupation outside the home, suffered from asthma, but devoted himself to the care of the home, his mother and their property interests.

After her son's death, a half-brother, Charles J. Ramsey, came to see Mrs. Tarbell twice daily and looked after her business for her. It was also shown on behalf of appellant that decedent's attitude toward respondent varied from anger and abuse to fond affection. She would chase him from the house threatening him with a hammer or a cane, nail up the windows and hide the bedclothes, but in a day or two she would relent and readmit him.

It was also shown by the evidence produced by appellant that Mrs. Tarbell was giving respondent his room and board "to read to her and stay in the evening"; that "she paid him room and board to read to her"; that Mrs. Tarbell stated "that he owed her money, never paid her a nickel for room and board . . . Mr. Walsh is working at Bender's and rooming here".

In April of 1933, Mrs. Tarbell made a holographic will using a form which was partly printed, in which she left her entire estate to respondent; a month later she made another will omitting any mention of him, which later will was admitted to probate. After her death (which occurred in January, 1935), a number of promissory notes made payable to her and signed by respondent were found among her personal effects.

Respondent, on the other hand, offered testimony tending to prove that at the time he took up his residence with Mrs.

Tarbell in 1927, her son Charles Sawdey was not well; that he suffered from asthma; that Mrs. Tarbell was ailing and required attention from someone other than her son, who died in 1930. Two nephews resided on the premises but their living quarters were in a room attached to the garage, and it is indicated that Mrs. Tarbell did not get along well with them and was afraid to stay alone. While she was able to care for her own needs a portion of the time, she was frequently ill and required assistance which was given by respondent.

During the period of six years from 1927 to 1933, respondent stayed with Mrs. Tarbell at night, attending her in various ways, reading to her and performing services about the house, including cooking, sawing wood, attending to the fires, laundry work, watering the lawn, cleaning up the yard and also the house. In addition, during this period, respondent drove Mrs. Tarbell about in her car evenings and on Sundays. Mrs. Tarbell handled her own business and until June, 1934, had exclusive access to her bank account, and from August, 1932, to June, 1934, she issued checks on her checking account and in September, 1933, she handled entirely by herself an insurance transaction with Mr. Ernest Green, who testified as a witness for appellant administrator, and who also prepared and witnessed the will executed by Mrs. Tarbell on May 18, 1933, which was admitted to probate.

The witness Ralph T. Merriam testified that during the years 1933 and 1934, Mrs. Tarbell personally transacted business with him and was in frequent communication with him.

Mrs. Mabel Aijain in whose home respondent was a roomer and boarder for several months prior to 1927, testified that she had known Mrs. Tarbell since 1928 or 1929, and that around Christmas, 1929, Mrs. Tarbell told her she had plenty of cash, whereupon the witness suggested that she do something for respondent, who had had a couple of years of medical training, to which Mrs. Tarbell replied: ''I have plans made for Pat (Walsh). He knows what they are. He won't lose anything by me. He won't lose anything by staying with me, what I want to do for him. He knows he will be taken care of. You don't need to worry.'' In a later conversation, this witness testified that Mrs. Tarbell told her ''that there was a pretty penny put by for him that he could have to

use; that she had plans made to know where the money was going, where it would do the best work; she didn't want it to be gambled or squandered; hard earned money. She thought Walsh was a capable man and would use it in the right way; she had provided for him. She said he knew about it.'' This witness further testified that in 1930, presumably in July, she and her husband wanted respondent Walsh to take a ''trip to Fresno on the bus,'' but Mrs. Tarbell would not permit him to go, saying, ''Mr. Walsh's time belonged to her, to keep my hands off, she needed him and she would not let him go''; that around January of 1934, the witness' husband wanted respondent to accompany him on a trip at which time Mrs. Tarbell told her in the presence of her husband and respondent: ''that Mr. Walsh was necessary, she must have him there; that she couldn't be alone; she had a crowd she had to fight; she needed Mr. Walsh for protection. I said, 'Why don't you have a good woman come in and do your work, take care of you?' She said, 'No woman can put up with the things that Mr. Walsh has to put up with. No woman is capable of handling this crowd.' She told me that she was afraid to be alone without Mr. Walsh there; she needed him for the protection he could give her. She also told me that she was weak and he waited on her, carried her up and down stairs, he especially read to her when she was buffeted, was the expression she used; that her nerves were unstrung; that Mr. Walsh read to her by the hour to quiet her, took care of her as her own son had done, and as he had promised Charlie he would do; he looked after her better than anyone else whom she could find; she was satisfied with him, and he was satisfied with the arrangement she had made with him. . . . many times, on almost any occasion I was there, averaging once a month during a period of two or three years, she spoke of Mr. Walsh, her dependence on him, the comfort he was, and the protection that he was in the crowd that she was in; her need for him; she expected to make it all right with him. She said she was leaving him sufficient to cover all that would be required; that he was satisfied with her arrangement.''

Mrs. Sides, at whose home in Arcadia the respondent and Mrs. Tarbell often stopped to buy eggs, testified that she saw Mrs. Tarbell occasionally during 1931, 1932 and 1933, and Mrs. Tarbell told her ''that Mr. Walsh drove her around a

good deal, and that she depended upon him to look after her, because she was afraid to stay alone, she said; and that she expected to see that he was recompensed. She said 'He is not going to lose by taking care of me.' . . . At one time, about this time, she told me Mr. Walsh took care that the boys did not bother her. She said she had two adopted boys that sometimes would come home and disturb her, and that he looked after her.''

From the foregoing *résumé*, it appears that the evidence produced in the instant trial was in direct conflict and presented questions of fact for the jury which were determined by it in favor of respondent. Such determination representing as it did the jury's choice between the conflicting inferences which were capable of being drawn from the evidence is conclusive upon this court, for the reason that there is evidence in the record upon which it was possible for the jury to base a finding that respondent rendered services on behalf of Mrs. Tarbell, and that they constituted a valuable consideration for her promise to pay, as expressed in the document of September 8, 1933.

Upon the former appeal it was held by this court that the document was merely a promise to pay for past services and was not an account stated; and that the trial court erred in rejecting evidence of the true value of respondent's services rendered before the execution of the document sued upon. Following that rule, the trial court in the instant action allowed both sides extremely wide latitude in their presentation of evidence upon all issues joined by the second amended complaint and answer, the second amended complaint being somewhat broader in scope than the complaint upon which the first trial proceeded. There was no error by the trial court in its denial of appellant's motion for a directed verdict, because under the evidence presented at the second trial it had no alternative except to submit the case to the jury for its determination.

Appellant urges that the trial court erred in permitting respondent to file his second amended complaint at the beginning of the second trial. This second amended complaint was based upon the rejected claim which was set up in the original complaint; consequently, the basic cause of action was not changed, and permission to file it was a matter within the discretion of the trial judge. In the absence of

a showing that this discretion was abused, such ruling cannot be disturbed by this court.

Since the partial holographic will (plaintiff's exhibit No. 2) was admitted into evidence as an exemplar of Mrs. Tarbell's handwriting and for no other purpose, and the jury instructed to that effect, no prejudicial error resulted therefrom. Likewise, there is no merit in appellant's point to the effect that the exclusion of the testimony of Dr. Eastman, a physician who attended Mrs. Tarbell during a period subsequent to the execution of the agreement sued upon, constituted prejudicial error. As a matter of fact, the trial court reversed its ruling as to this evidence when it permitted Dr. Ohlhoffer to testify, but appellant failed to take advantage of such reversal and, therefore, has no ground for complaint upon that score.

Appellant contends that the trial court gave erroneous and conflicting instructions to the jury. A review of all of the instructions given reveals that the jury was fully and correctly instructed on the law applicable to the facts presented at the trial herein, and that there were no errors sufficiently prejudicial in character to warrant a reversal of the judgment.

The jury in the instant case found there was no undue influence and that Mrs. Tarbell was of sound mind when she executed the document which forms the basis of this action; the document itself fixed respondent's compensation at two thousand dollars per year, and the verdict which was returned by the jury allowing this amount for a period of six years cannot be said to be so excessive as to shock the sense of justice and raise the presumption that it was the result of passion and prejudice.

The judgment is affirmed.

Doran, J., and White, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 4, 1940, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 30, 1940.