[Civ. No. 15009. First Dist., Div. One. Apr. 18, 1952.]

MAXINE B. DOW, as Administratrix, etc., Appellant, v. RIVER FARMS COMPANY OF CALIFORNIA (a Corporation), Respondent.

W. P. Caubu, Robert E. Halsing, Sullivan, Roche, Johnson & Farraher for Appellant.

Devlin, Diepenbrock & Wulff for Respondent.

PETERS, P. J.—Plaintiff, Maxine B. Dow, is the widow of Edgar Laurence Dow, and the administratrix of his estate. In her representative capacity, on December 6, 1949, she brought this action against the River Farms Company of California to recover from it the sum of $50,000, alleging that the corporation had promised and agreed but failed to pay that sum to her husband. The corporation admitted that it had offered to pay Dow $50,000, but averred in its answer that Dow rejected the offer, that the cause of action was barred by the statute of limitations, and that there was no consideration for the promise. The trial court found in favor of the defendant on all issues, and plaintiff appeals.

Edgar Laurence Dow, a retired dentist, in 1913 incorporated the respondent corporation. He became a stockholder, director, president and general manager of the company at its inception, and remained as such until the time of his death in 1930. His estate is still in the course of administration, and appellant, who is now a director and, as administratrix, a stockholder of the company, is the administratrix of his estate.

From 1913 to the end of 1917 Dr. Dow served as president and general manager of the company without compensation. Starting on January 1, 1918, and continuing until his death in 1930, he received a salary of $1,000 per month for these services.

On July 9, 1917, the then board of directors met. Dr. Dow presided. He was requested to leave the room. In his absence the directors discussed paying Dr. Dow for his past services. They then passed the following resolution:

"WHEREAS, for the past four years and since the organization of this company, E. L. Dow has acted as the president thereof without compensation and has ungrudgingly and unselfishly devoted his time and attention to the affairs of this company and by his energy and efficient management has brought the company to a condition where it is this year about to provide a substantial return, and

"WHEREAS, E. L. Dow has never requested nor has he ever indicated that he expected any payment for said services,

"Now, THEREFORE, BE IT RESOLVED, that it would be an injustice in view of the services rendered by Dr. Dow not to in some measure compensate him therefor, and

"BE IT FURTHER RESOLVED, that whenever this company has no floating indebtedness or on or about January 1st, 1918,

the Vice President and the Secretary be and they are hereby authorized and directed for and in the name of this company and as its act to make a cash payment to E. L. Dow of the sum of $50,000 for and in consideration of his past services rendered, and

"BE IT FURTHER RESOLVED: That from and after January 1st, 1918 said E. L. Dow, as president of this company be paid the sum of $1,000 per month for his services as such."

After the resolution was passed Dr. Dow was recalled to the room. There is a conflict as to what then occurred. John F. Humburg, who at the time of trial was one of the two directors then surviving, and who was then still a director, testified that Dr. Dow was greatly surprised and then stated: "I cannot accept it." Hiram Johnson, Jr., who is the other surviving director who was present at the July, 1917, meeting, and who is also still a director, testified that Dr. Dow did not then or thereafter refuse to accept the $50,000 mentioned in the resolution.

After the July 9, 1917, meeting, Dr. Dow prepared a letter addressed to the directors formally rejecting the $50,000 payment and tendering his resignation. There was a controversy at the trial, and much is said in the briefs, as to whether this letter was ever signed by Dr. Dow. The original had been lost. The copy was not signed. A copy of this letter was attached to the answer showing a signature, and appellant failed to file the affidavit required by section 448 of the Code of Civil Procedure within the time there provided. She did move for relief under section 473 of the Code of Civil Procedure at the commencement of the trial, and the trial court permitted the filing of the affidavit and motion for relief, but indicated that it was taking the matter under advisement. The record does not show whether the motion was ever passed upon. Regardless of these facts, however, director Humburg testified that in the August, 1917, meeting of the board, Dr. Dow read the letter to the board, that the matter was then discussed "and because he refused it we thought the thing was over, all that $50,000 bonus business. He refused it." Johnson, while he denied hearing the letter read, admitted that he had seen, at that time, an unsigned copy of it. This conflict was resolved by the trial court in favor of respondent. Therefore, whether the letter was signed or not is not an important matter—it was read to and considered by the board.

The letter reads as follows:

"San Francisco, July 21, 1917.

"Directors
River Farms Company of California,
San Francisco, California.

Dear Sirs:

"I have carefully considered the very generous offer made by this board and expressed in a resolution passed at the last meeting in which you offered to pay me for services rendered this company, the sum of $50,000.00 on or about January 1, 1918 and a salary of $1,000.00 a month from that date.

"I wish to state that whatever services I may have rendered this company in the past has not been with any idea that I was to receive payment for the same. Some of your members have on several occasions during the past few years insisted that I should receive a salary. I believe that I have at all times consistently refused the same, as I probably realized better than any of you that this company was not in a condition to pay any salaries or any amounts that it could honestly avoid.

"I believe that my greatest incentive to work and whatever efforts I may have made to solve the many problems and difficulties that we have met has been the apparently complete support and loyalty of all concerned, also the confidence that you have displayed in supporting any suggestion or plans that I have offered not only with your money but with your hearty cooperation. I think it is needless for me to say that without your complete cooperation and unity of purpose of action that the successful conclusion that is a fact today, could not have been realized. This support combined with my complete confidence in the value of the property when reclaimed and financed has made my work interesting.

"It has been brought to my attention, however, that the action of this board at its last meeting was not satisfactory to some of the stockholders of this company.

"In view of this fact, I feel that I can not accept your very generous offer and I must insist that at this meeting you rescind the resolution passed at your last meeting. I wish, however, to assure the members who were responsible for this offer that they have my sincere thanks and also that such action and intention on their part more than re-

pays me for any services that I may have rendered this company. I believe that you will agree with me when I state that the affairs of this Corporation representing an investment in excess of $4,500,000.00 in an agricultural proposition presents many intricate problems and should be handled in a very careful and efficient manner, and as these duties must largely and logically fall or come on the President, this office should be filled by someone who has not only the confidence of a majority of this board, but the confidence and complete support of at least all the large stockholders.

"I am forced to the conclusion that I have not this complete support and confidence that I feel is necessary for the best interests of the Company. I feel that it is best at this time to tender my resignation as President to take effect immediately if possible.

"The association with you during the past few years, has been pleasant and the work has been interesting. I thank you for your confidence and the loyal manner that you have stood by me during the past four years.

"Assuring you that I will at all times give all the assistance and advice if needed or requested to further the prosperity of this Company, I am,

Yours very truly,

ELD:HH"

There is no reference in the minutes of the July or August, 1917, meetings to this letter, nor was there a formal rescission of any part of the July resolution, nor do the books of the company contain any further reference to this $50,000 item. There is no evidence that Dr. Dow ever made a demand for the $50,000, and admittedly Mrs. Dow made no such demand until the filing of this suit. We do know that Dr. Dow continued to act as president of the board, and that starting January 1, 1918, and until his death in 1930, he received $1,000 a month for his services.

The complaint, in an attempt to avoid the statute of limitations, alleges that the corporation first became free of floating indebtedness in 1948. Much of the record is devoted to a discussion of this problem. The trial court found that the corporation became free of floating indebtedness more than four years prior to the commencement of this action, and that the action was therefore barred. In view of the

conclusions we have reached, it is not necessary to pass upon this issue.

It is quite apparent that the resolution of July 9, 1917, contained two separate, distinct, and severable propositions. One was a promise to pay $50,000 for past services, the other was an offer to pay $1,000 a month for future services. Although Dr. Dow rejected the offer for future services by tendering his resignation, it is quite apparent that he was induced to withdraw that resignation, because he continued to act as president and received $1,000 a month therefor. By the actions of both parties—Dr. Dow and the corporation—it is clear that Dr. Dow accepted the offer, and no contention is made to the contrary.

But the portion of the resolution promising to pay the $50,000 for past services is in a different category. It probably was not intended to create any legal obligation at all. (See *Southern Glass Co.* v. *Consolidated Inv. Corp.*, 1 Cal.App. 2d 510 [36 P.2d 1077].) But if it be assumed that it was intended to constitute an offer to contract, it was clearly rejected by Dr. Dow, and there is no evidence at all that after the rejection either Dow or the corporation believed that any agreement had been entered into. Certainly, there is no evidence of an acceptance, which is necessary. (*Hoge* v. *Lava Cap Gold Mining Corp.*, 55 Cal.App.2d 176 [130 P.2d 470].)

In our opinion, however, this portion of the resolution was not an offer to contract at all—it was simply a promise to make a gift. That gift was rejected by Dr. Dow. Even if it had not been rejected, it amounted to no more than a promise to make a gift, and, as such, was unenforceable. Such a promise is not supported by a legal consideration.

It is a general principle of common law that a mere moral consideration unconnected with a precedent perfect or imperfect legal consideration, will not support a subsequent promise to pay. Although Lord Mansfield had announced in 1775, in *Atkins* v. *Hill*, 98 Eng.Rep. 1088, that a moral consideration was sufficient to support a subsequent promise to pay, in *Wennall* v. *Adney* (1802), 127 Eng.Rep. 137, and in *Eastwood* v. *Kenyon* (1840), 113 Eng. Rep. 482, this view was expressly repudiated. The American jurisdictions, generally, have consistently followed the rule that a mere moral obligation unconnected with a past perfect or imperfect legal consideration, will not support a sub-

sequent executory promise. (See annotations 8 A.L.R.2d 787; 79 A.L.R. 1346; 17 A.L.R. 1299.)

The California rule is embodied in section 1606 of the Civil Code. That section, which has been in our code since 1872, reads as follows: "An existing legal obligation resting upon the promisor, or a moral obligation originating in some benefit conferred upon the promisor, or prejudice suffered by the promisee, is also a good consideration for a promise, to an extent corresponding with the extent of the obligation, but no further or otherwise." This section has been consistently interpreted in accordance with the common law rule. Thus, in *Foltz* v. *First Trust & Savings Bank*, 86 Cal.App.2d 59 [194 P.2d 135], X intervened to prevent Y from disinheriting her son, Z. Later Z inherited and promised to pay an annuity to X of $840 a year. The promise was held to be unenforceable, the court stating (p. 62): "Under section 1606 of the Civil Code, a moral obligation is insufficient to support an express promise where there has not been a prior legal obligation founded on good and valuable consideration."

In *Estate of McConnell*, 6 Cal.2d 493 [58 P.2d 639], X and Y had been partners for many years. X had devoted more time to the partnership affairs than had Y because of the latter's sickness. The partnership was dissolved, each sharing equally. Thereafter, X gave Y occasional beneficial business advice. Several years later Y gave X a $5,000 note in payment for these past services. There was no evidence that when these services were rendered Y expected to pay for them, or that X expected to be paid. The promise was held to be unenforceable, the court stating (p. 498): "It is true that in some states a moral, as distinguished from a legal consideration, will under some circumstances be sufficient to form a valid and binding contract [citing a Minn. case], but such has never been the rule in this state. California cases have construed said code section [Civ. Code § 1606] to mean that 'a moral obligation is sufficient to support an express promise, where a good and valuable consideration has once existed.' [Citing seven cases and two encyclopedias.]" (See cases collected 6 Cal.Jur. p. 181, § 124.)

The case of *Medberry* v. *Olcovich*, 15 Cal.App.2d 263 [59 P.2d 551, 60 P.2d 281], is not contrary to these cases. There two boys were riding in an automobile when one of them

was hurt. The father of the boy who was uninjured, and who was driving, promised the father of the injured boy to pay for medical and hospital expenses. The promisor knew that the promisee was unable to pay such expenses. In reliance on the promise, the promisee incurred substantial expenses and the promisor knew about it. Even though the boy who was driving and his father were not legally responsible under the facts, the court held the promise to pay was enforceable. Obviously, the case is one of estoppel —reliance and change of position by the promisee upon the promise of the promisor.

█ If there was once a past legal obligation, but the remedy is barred, such as where the debt is barred by the statute of limitations or a discharge in bankruptcy, a subsequent promise to pay is enforceable (*Fidelity etc. Co.* v. *Thompson*, 128 Cal. 506 [61 P. 94]); or where the original obligation is barred by the statute of frauds the subsequent promise to pay is enforceable. (*Coulter* v. *Howard*, 203 Cal. 17 [262 P. 751].)

There is a modern trend in the authorities in some states to the effect that where services are rendered under circumstances where the person rendering them reasonably may expect to be paid, and the person receiving them should expect to pay, a subsequent promise to pay is enforceable. (See cases collected 8 A.L.R.2d 798.) But even under this rule, if there was no expectation of payment by either party when the services were rendered, the promise is a mere promise to make a gift and not enforceable. (See *Old American Life Ins. Co.* v. *Biggers*, 172 F.2d 495; *Marnon* v. *Vaughan Motor Co.*, 184 Ore. 103 [194 P.2d 992].)

Appellant places her main reliance on *Carrington* v. *Smithers*, 26 Cal.App. 460 [147 P. 225], which involved a subsequent written promise to pay a broker after valuable services had been performed by the broker. There the evidence demonstrated that the services were performed and received with the expectation that payment should be made. Thus, there was an implied contract to pay for them which perhaps could not be enforced by reason of the statute of frauds. There was at least a past imperfect obligation to pay. (See, also, *Walsh* v. *Parker*, 41 Cal.App.2d 435 [106 P.2d 925].)

█ In the instant case the trial court found that when the services were rendered there was no expectation of payment. That finding is amply supported by the resolution

and by Dr. Dow's letter. They demonstrate that when the services were rendered there was no expectation on Dr. Dow's part that he was to receive payment, or that the corporation intended to pay. There never was a past legal obligation, perfect or imperfect. The promise amounted to no more than a promise to make a gift and is unenforceable.

Appellant argues that the resolution is indivisible, and that Dr. Dow could not accept the offer for future payment without accepting the offer for past services. The promises were obviously severable, and the parties, by their actions, so treated them.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.