Filed 7/17/13  Stoddart v. Zamora CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AL STODDART, | |
| Plaintiff and Respondent, | G047322 |
| v. | (Super. Ct. No. 30-2011-00471328) |
| JOHN ZAMORA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment and orders of the Superior Court of Orange County, Richard Luesebrink, Judge (retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.), and H. Michael Brenner, Judge.  Affirmed.

Law Office of Julie M. McCoy and Julie M. McCoy for Defendant and Appellant.

Pistone & Wolder, Thomas A. Pistone and Eric J. Medel for Plaintiff and Respondent.

\*          \*          \*

Al Stoddart sued John Zamora for breach of an oral agreement to pay him 10 percent of a $6.2 million litigation settlement.  The court entered judgment for Stoddart in the amount of $530,000 representing $620,000 minus $90,000 already paid.  Zamora appeals, contending that either (1) the purported agreement is unsupported by consideration inasmuch as past consideration cannot support a contract, or (2) the purported agreement is too indefinite to be enforced.

We are not persuaded.  Stoddart presented evidence to show that, after the litigation was settled, Zamora promised to pay him 10 percent of the settlement proceeds, on the understanding that Stoddart would perform certain future services.  In reliance on that promise, Stoddart assisted Zamora with the settlement agreement, with a press release, and with certain tax work.  Furthermore, he was willing to provide such other services within his area of expertise as Zamora might require.  His proffered evidence was sufficient to support the judgment.  We affirm.

I

FACTS

A.  *Background:*

Stoddart, a certified public accountant, had been an officer and director of various large companies and had been in the printing industry since 1984.  Zamora was running a printing company that was in dire financial condition.  Stoddart agreed to help out and started working for the company part time for about $100,000 annually.  He later became the chief operating officer, eventually earning a salary of $200,000 or $250,000 per year.

Stoddart lined up a $9 million investment to keep the company afloat.  However, after the deal was consummated, the company could not meet its financial covenants with the investors.  So, the investors forced Zamora out of the company.

Although Stoddart stayed on for a while longer, the investors ultimately wanted him out of the company too.

At some point, Zamora told Stoddart that he was thinking about suing the investors. According to Stoddart, Zamora offered to pay him 10 percent of any litigation recovery if he would help convince some attorneys to take the case on a contingency basis. Stoddart says he rejected the offer, out of fear that it would prejudice any testimony he might give. Further according to Stoddart, after Zamora hired some attorneys, they recommended against an agreement for Stoddart to receive a percentage of Zamora's recovery. So, as far as Stoddart was concerned, he and Zamora had no agreement at that point. He simply intended "to work and help [Zamora] out for no agreement, and not expect anything." Zamora affirms that he had no deal with Stoddart, and indeed says that he never made Stoddart any offer at all.

Stoddart testified that over the course of the litigation, he met with the attorneys at least a dozen times, helped them build the case, and reviewed and provided input on drafts of pleadings. He thought he may have put in several hundred hours on the litigation over a year and a half or two years. Stoddart said that, during his deposition, he provided key testimony on a tax issue, and the case was settled almost immediately thereafter for $9.2 million.

According to Stoddart, shortly after the case settled, Zamora renewed the offer to pay him 10 percent of his recovery if Stoddart would "continue to help him." Stoddart stated that when Zamora initially made the postsettlement offer to him, he did not identify any specific work that he wanted Stoddart to do. Stoddart said: "The only thing that we talked about at the time was continuing to help him with the settlement agreement, whatever came up. And there wasn't any other specifics. It was just to continue to help him in whatever might come up." They never addressed the period of time during which Zamora might expect Stoddart to help out. Ultimately, Stoddart

3

reviewed and commented on the draft settlement agreement, helped draft a press release announcing the settlement, and worked on a couple of tax issues for Zamora.

Zamora made monthly payments of $5,000 to Stoddart from April 2009 through September 2010, totaling $90,000, and then stopped. However, at trial, Zamora denied that he ever had any agreement with Stoddart to pay him for his assistance. Zamora acknowledged that he had been paying Stoddart $5,000 a month, but said it was purely out of generosity. Zamora further testified that when he started making the payments, he originally had in mind to pay Stoddart a total of $60,000, but wound up paying him more.

## B. *Jury Verdict and Judgment:*

The jury found: (1) "the contract terms [were] clear enough so that the parties could understand what each was required to do[;]" (2) "the parties agree[d] to give each other something of value[;]" (3) "the parties agree[d] to the terms of the contract[;]" (4) Stoddart did "all, or substantially all, of the significant things that the contract required him to do[;]" (5) "all the conditions [occurred] that were required for JOHN ZAMORA's performance[;]" (6) Zamora "fail[ed] to do something that the contract required him to do[;]" (7) Stoddart was "harmed by that failure[;]" and (8) his damages were $530,000. The court entered judgment in favor of Stoddart in the amount of $530,000, plus costs and postjudgment interest.

## C. *Postjudgment Motions and Appeal:*

Zamora filed a motion for judgment notwithstanding the verdict and a motion for a new trial. The court denied both motions. Zamora appeals from the judgment and the order denying his two motions.

4

II

DISCUSSION

*A. Introduction:*

Zamora contends that to the extent the purported promise to pay $620,000 was based on Stoddart's prior assistance during trial, it is unsupported by consideration, and to the extent the purported promise was based on Stoddart's agreement to perform services in the future, it was unenforceable because it was too indefinite. Stoddart counters that Zamora fails to address whether there is substantial evidence to support the jury's findings. He also says Zamora's arguments concerning Stoddart's past trial assistance are "misplaced." Furthermore, Stoddart says the evidence at trial showed that the parties had an enforceable agreement based on his performance and Zamora's acceptance of that performance.

*B. Substantial Evidence:*

Even though Zamora testified that he and Stoddart never had an agreement, the jury found that they did. Although the jury made no findings on the particular consideration supporting the contract or the nature of the services Stoddart was to provide after the litigation was settled, it nonetheless found that Stoddart and Zamora each agreed to give the other something of value.

"When we review a jury verdict, we apply the substantial evidence standard of review. All conflicts in the evidence are resolved in favor of the prevailing party, and all reasonable inferences are drawn in a manner that upholds the verdict. [Citations.]" (*Holmes v. Lerner* (1999) 74 Cal.App.4th 442, 445.) Stoddart's testimony, although contradictory to Zamora's, constituted substantial evidence that the parties had an agreement. (Evid. Code, § 411; *Quintanilla v. Dunkelman* (2005) 133 Cal.App.4th 95, 117.)

5

Stoddart testified that he felt he was owed the $620,000 at least in part because of past services rendered. At the same time, he also testified that, as part of the deal, he agreed to continue providing services to Zamora after the settlement was reached. Stoddart further testified that the agreement for Zamora to pay him $620,000 for his services arose only after the litigation was settled. Stoddart's testimony provides substantial evidence to support the jury's finding that he and Zamora reached an agreement.

*C. Past Services as Consideration:*

This leads us directly to Zamora's first point. He argues that Stoddart's assistance rendered during the litigation could not serve as consideration for the agreement purportedly reached only after the litigation was settled. We agree. "Past consideration cannot support a contract. [Citation.]" (*Passante v. McWilliam* (1997) 53 Cal.App.4th 1240, 1247; see also *Dow v. River Farms Co.* (1952) 110 Cal.App.2d 403.) Furthermore, any promise made only after services have been performed without the expectation of payment is nothing "more than a promise to make a gift and is unenforceable." (*Dow v. River Farms Co., supra,* 110 Cal.App.2d at p. 411.)

The jury found that Stoddart did "all, or substantially all, of the significant things that the contract required him to do" and that "all the conditions [occurred] that were required for JOHN ZAMORA's performance." This could be interpreted to mean that Stoddart had completed all of the work required of him to trigger Zamora's obligation to pay $620,000, and that no additional services remained to be performed. However, if the jury concluded that Zamora had offered to pay $620,000 exclusively for services rendered in the past, then the contract was unsupported by consideration and unenforceable. (*Passante v. McWilliam*, *supra*, 53 Cal.App.4th at p. 1247; *Dow v. River Farms Co., supra,* 110 Cal.App.2d 403.) We turn, then, to the question of whether the

6

evidence supports a finding that an enforceable agreement arose only after the litigation was settled.

*D. Indefinite Terms:*

"'Under California law, a contract will be enforced if it is sufficiently definite (and this is a question of law) for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached.' [Citation.] 'To be enforceable, a promise must be definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages.' [Citations.] 'Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable.' [Citations.] 'The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.' [Citations.] But '[i]f . . . a supposed "contract" does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, there is no contract.' [Citation.]" (*Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 209.)

Zamora argues that any contract between the parties is too indefinite to be enforceable. We disagree. True, as Stoddart testified, the agreement between the parties did not specifically identify the postsettlement tasks he was to perform. However, shortly after the parties entered into their agreement, Stoddart did, as requested, assist in the documentation of the settlement agreement and he also drafted a press release concerning the settlement. Thereafter, he did some tax work Zamora requested, on more than one occasion and with respect to more than one issue. Although Stoddart could not identify any particular tasks he had promised to perform in the future, he stated that he had

7

committed to "continue to help [Zamora] in whatever might come up."

As Stoddart says, he provided services to Zamora after the settlement agreement was reached and Zamora accepted those services and paid for them. Therefore, the course of dealing between the parties demonstrates the scope of the contract. "That the actions of the parties should be used as a reliable means of interpreting an ambiguous contract is, of course, well settled in our law." (*Crestview Cemetery Assn. v. Dieden* (1960) 54 Cal.2d 744, 752-753.) Put another way, "'when a contract is ambiguous, a construction given to it by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight, and will, when reasonable, be adopted and enforced by the court.'" (*Id.* at p. 753.) "When the parties perform without objection under a contract the terms of which appear to be indefinite, they have indicated that its terms were sufficiently certain so that they, at least, could perform it." (*Bohman v. Berg* (1960) 54 Cal.2d 787, 796.) "'"The law does not favor but leans against the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if that can be ascertained. . . .'" [Citations.]" (*Id.* at p. 797.)

Inasmuch as Stoddart performed certain postsettlement services and Zamora paid $90,000 for them, it is fair to say that Zamora accepted those services. Stoddart reviewed some postsettlement documentation and assisted in the preparation of a postsettlement press release. In addition, he assisted with two items of postsettlement tax work. Stoddart testified that he assisted Zamora's accountant with the determination of the tax basis of the company and with a response to certain Franchise Tax Board notices regarding the failure to provide information concerning the company. This evidence shows that, after the litigation settled, Stoddart continued to perform services

8

within his area of expertise, such as one would offer under a consulting services agreement, as needed by Zamora.

We cannot conclude that the purported contract is too indefinite to be enforceable.  This, as we have noted, is a question of law.  (*Bustamante v. Intuit, Inc.*, *supra*, 141 Cal.App.4th at p. 209.)

*E.  Motion for Judgment Notwithstanding the Verdict:*

Zamora filed a motion for judgment notwithstanding the verdict, on the same general grounds as raised in this appeal.  He contends the court erred in denying the motion, and maintains the contract was legally unenforceable.  We disagree, for the same reasons as stated above.

"A motion for judgment notwithstanding the verdict may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support.  [Citation.]"  (*Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68.)  Here, the jury found, in essence, that the parties entered into a contract, each party agreed to give the other something of value, Stoddart did what was required of him under the contract, and Zamora failed to pay.  Substantial evidence, as discussed above, supports these findings.  The motion for judgment notwithstanding the verdict was properly denied.

*F.  New Trial Motion:*

*(1)  Introduction—*

"We defer to the trial court's factual determination when the court grants a motion for new trial, not when the court denies such a motion.  When the court denies the motion, we presume the jury's verdict is correct.  [Citation.]"  (*Mammoth Lakes Land Acquisition, LLC v. Town of Mammoth Lakes* (2010) 191 Cal.App.4th 435,473.)

9

"Code of Civil Procedure section 657 states:  'A new trial shall not be granted upon the ground of insufficiency of the evidence to justify the verdict or other decision, nor upon the ground of excessive or inadequate damages, unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision.'  A trial court has broad discretion in ruling on a new trial motion, and the court's exercise of discretion is accorded great deference on appeal.  [Citation.]  An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice.  [Citations.]  Accordingly, we can reverse the denial of a new trial motion based on insufficiency of the evidence or excessive damages only if there is no substantial conflict in the evidence and the evidence compels the conclusion that the motion should have been granted."  (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 751-752.)  That is not the case here.

*(2)  Original motion—*

In his new trial motion, Zamora argued there was insufficient evidence to support the jury's findings, the verdict was against the law, and the damages were excessive.  He primarily reargued the evidence and issues we have already addressed above.  In addition, he devoted a small portion of his motion to the assertion that the jury awarded excessive damages.  He argued that he was entitled to a new trial on damages because the damages either were not recoverable at all or were excessive in amount.

With respect to nonrecoverable damages, Zamora made two arguments.  First, he said no contract was ever created between the parties so any damages award at all was excessive.  As we have already said, however, substantial evidence supports the jury's finding that a contract was created.  Second, Zamora said that damages could not be awarded for presettlement work.  We have already disposed of that argument as well,

10

having determined that the contract arose after the litigation was settled and that postsettlement services provided the consideration supporting the contract.

With respect to postsettlement services, Zamora said in his motion, albeit without citation to legal authority, that even if Stoddart were entitled to compensation for such services, he "never identified a proper amount owed to him for such work or even a way to measure the value of that work." To the contrary, Stoddart asserted that Zamora promised to pay him $620,000 under a contract arising after the litigation had settled, that Stoddart had performed all services requested of him, and that Zamora refused to pay the $620,000 contract amount. Stoddart claimed that the damages he suffered were equal to $620,000 minus the $90,000 paid, or $530,000, and the jury so found.

*(3) Arguments on appeal—*

On appeal, Zamora attempts to recast his new trial motion, raising new legal theories and citing authorities he did not put before the trial court. Now, he says that: (1) if Stoddart's performance under the contract was complete, then the contract was a unilateral one, and Stoddart's recovery was limited to the amount of the installment payments owing as of the time of trial (see, e.g. *Cobb v. Pacific Mutual Life Ins. Co.* (1935) 4 Cal.2d 565, 571-573; *Minor v. Minor* (1960) 184 Cal.App.2d 118, 122-123); or (2) if Stoddart's performance under the contract was not complete, his recovery was limited to the reasonable value of the services he had performed, under a quantum meruit theory (see *Cambridge Co. v. City of Elsinore* (1922) 57 Cal.App. 245, 247), but Stoddart had failed to raise a quantum meruit theory at trial and even under a quantum meruit theory the damages award was excessive.

We generally do not consider new theories raised for the first time on appeal. (*Hogan v. Country Villa Health Services* (2007) 148 Cal.App.4th 259, 269.) However, we may consider new theories which present questions of law based on undisputed facts. (*Mito v. Temple Recycling Center Corp.* (2010) 187 Cal.App.4th 276,

11

279; *De Anza Santa Cruz Mobile Estates Homeowners Assn. v. De Anza Santa Cruz Mobile Estates* (2001) 94 Cal.App.4th 890, 908.) The problem here is that the issues raised are not based on undisputed facts.

The first factual question, that Zamora raises, is whether Stoddart fully performed all of the work the contract required him to do or whether he was required to perform such future services as Zamora might require of him. The second question that arises is whether the contract required a one-time payment of $620,000 or whether it was an installment contract. The third question that arises is the reasonable value of Stoddart's services. Clearly, these questions are based on disputed facts pertaining to which the record contains conflicting evidence.[1] Consequently, it is inappropriate for us to consider Zamora's new theories on appeal.

### III

### DISPOSITION

The judgment and orders are affirmed. Stoddart shall recover his costs on appeal.

MOORE, J.

WE CONCUR:

RYLAARSDAM, ACTING P. J.

BEDSWORTH, J.

---

[1] We reject Zamora's argument that, inasmuch as only Stoddart testified to the existence of a contract, the facts are undisputed for the purposes of appeal. In any event, we cannot say that Stoddart's testimony standing alone is a model of clarity and not subject to interpretation.

12