## SIMPSON v. FULCHER.
### No. 7661.

Court of Civil Appeals of Texas. Austin.
Nov. 18, 1931.

Rehearing Denied Jan. 6, 1932.

Second Motion for Rehearing Overruled
Feb. 10, 1932.

James M. Simpson, of Eden, and Kerr & Gayer, of San Angelo, for appellant.

BLAIR, J.

Appellant sued appellee for contribution for losses growing out of an alleged partnership agreement in connection with the purchase, pasturage, and sale of certain goats. A jury trial resulted in judgment for appellee; hence this appeal.

The controversy arose out of the following facts and transactions: Appellee owed Eden State Bank and Zack Murray about $3,600, and for a part of which indebtedness appellant was surety. On November 11, 1929, appellee purchased some 770 head of goats, which he testified he purchased for appellant; that appellant agreed to pay the above and other debts of appellee, aggregating $3,780, as consideration for the goats; and that he agreed to pasture and care for the goats for appellant for a fixed price per head. Shortly after the goats were purchased, appellant paid the above and other items of indebtedness for appellee, aggregating $3,780, and appellee began pasturing and caring for the goats. On January 1, 1930, appellant borrowed $3,780 from a bank at Paint Rock on his own note secured by a chattel mortgage on the goats. Appellant testified that he executed this note and mortgage at the request and for the use and benefit of appellee, under agreement that, as the goats were sold by appellee, the proceeds would be applied in payment of the note; the profits to be divided equally. Appellee did not sign the note or mortgage, and testified that he knew nothing of them until after appellant sold 200 head of the goats, when the following agreement was executed between himself and appellant:

"This contract made and entered into this 21st day of March, A. D. 1930, by and between Jas. M. Simpson and C. K. Fulcher.

"It is agreed by and between the parties hereto that they have a bunch of approximately 495 head of mixed goats, and that there is owing on said goats the sum of $2383.35, as of January 1st, 1930, and that the mohair has been sold amounting to $459.60, which will be credit on above amount, and that there will be some expenses in connection with said goats, however the said C. K. Fulcher is to take care of the goats, and when said goats are sold the first cost is to be paid, together with any expenses incurred in the handling of said goats, after which the said Jas. M. Simpson and C. K. Fulcher are to divide the profits from the handling of said goats if any.

"It is further understood and agreed that the said C. K. Fulcher by reason of his taking care of the goats is to have full charge of the hiring of hands and attending to said goats.

"However, the said Fulcher will advise with Jas. M. Simpson with reference to handling of said goats.

"C. K. Fulcher,
"Jas. M. Simpson."

The Paint Rock Bank sued both appellant and appellee for the balance due on the $3,780 note, but recovered judgment only against appellant; sold the goats under the order of sale for $603.78, and applied the proceeds on the judgment. By this suit, appellant seeks contribution from appellee for one-half the balance due on the judgment as a partnership loss or obligation under their above written agreement.

Special Issue No. 2, and the jury's answer thereto, are as follows: "Did James M. Simpson buy the goats in question from C. K. Fulcher? Answer yes or no. Answer: "Yes."

Appellant contends that this issue submits only appellee's theory of the case and ignores his theory, and is therefore a comment upon the weight of the evidence by the trial court. The contention is not sustained. Appellee's defense to the suit was that appellant purchased the goats from him, and he was entitled to have the issue submitted separately and distinctly from appellant's theory of the case. The court submitted appellant's theory of the case by special issue No. 15, which with the jury's answer are as follows: "Was

the money borrowed by J. M. Simpson from the Paint Rock Bank borrowed with Fulcher's knowledge and consent, and for the use and benefit of said Fulcher? Answer yes or no. Answer: "No."

Appellant contends that the written partnership agreement above set out established as a matter of law: "(1) Joint ownership of the goats and liability for losses; and (2) (in the absence of a different agreement as to losses) a right of contribution on losses in the same ratio as that in which the profits, if any, would have been divided."

██ The proposition may correctly state the law in the abstract, but it has no application to the facts of this case, because the written agreement does not establish joint ownership of the goats as a matter of law. It merely states that "they have a bunch of goats," but the interest of each party in the goats is not stated in the contract. Appellee's testimony and the finding of the jury were that the goats belonged to appellant. And that parol evidence was admissible to show the interest of each partner in the goats is well settled.

█ The contract bound the proceeds of the sale of the goats for the indebtedness against them; but it in no manner bound appellee to pay any of the indebtedness in the event the proceeds of sale did not pay the debt. It only bound him to pay the expenses incurred in the care of the goats. The jury found on sufficient evidence that the indebtedness was not incurred at the request and for the use and benefit of appellee. The written partnership contract did not bind appellee to pay the debt, and there was neither allegation nor proof by appellant that appellee obligated himself to pay the debt in question, or any part of it. The effect of the contract under the findings of the jury and the evidence was that appellant would furnish the capital (the goats) and appellee would furnish the pasture and his services in the care of the goats to the partnership agreement; the profits, if any, to be divided equally. The law with regard to this question is well stated in 20 R. C. L. 930, § 146, as follows: "As a general rule where one partner furnishes the capital and another labor there is no right of contribution in favor of the former against the latter for the losses incurred in the conducting of the affairs of the partnership. In the absence of any agreement on the part of a partner to advance a given share of the capital needed to carry on a joint speculation, or any promise to repay the plaintiffs for their advances, no recovery may be had since from the mere fact that one partner advanced the whole of the capital the law will not imply a promise by his copartner to repay any of it during the continuance of the partnership. Hence, if on the dissolution of a firm there is a loss of capital after all debts are paid, the partner advancing the capital or his personal representatives cannot compel the other partners to contribute toward such loss." Johnson v. Ballard, 83 Tex. 486, 18 S. W. 686; Washington v. Washington (Tex. Civ. App.) 31 S. W. 88.

Since there were no pleadings, or, if pleadings, no proof that appellee agreed to contribute to the capital of the partnership, or to pay any part of the indebtedness against the goats, he is not bound to contribute to his partner for any loss of capital or depreciation in the price of the goats furnished by him to the partnership, and the court did not err in refusing to submit the special requested issues on this theory of recovery.

We find no error in the judgment, and it will be affirmed.

#### On Motion for Rehearing.

█ On motion for rehearing, appellant insists that the trial court erred in refusing to submit certain special issues requested by him. Other than merely copying the assignments of error referring to the refused issues by number in his brief, these questions were in no manner urged by appellant in his brief filed herein.

The new rules for briefing cases in the appellate courts require "a statement and/or argument on the errors assigned." Chapter 45, Acts 42nd Legislature (1931), p. 68, § 1 (Vernon's Ann. Civ. St. art. 1757). This rule would at least require appellant to brief his assignments that the court erred in refusing to submit his requested special issues by "a statement and/or argument" from the record showing that the requested issues were raised by the pleadings and evidence; and, in absence of such statement and/or argument, the assignments will be regarded as abandoned or waived.

Motion overruled.