[L. A. No. 14748. In Bank.—June 17, 1936.]

In the Matter of the Estate of LEE A. McCONNELL, Deceased. FRANKIE E. McCONNELL, Appellant, v. BIBLE INSTITUTE OF LOS ANGELES et al., Respondents.

Meserve, Mumper, Hughes & Robertson, William Larrabee and Timon E. Owens for Appellant.

Newby & Newby, Nathan Newby, and Dee Holder for Respondents.

THE COURT.—This case was taken over after decision by the District Court of Appeal, Second District, Division One. After further consideration of the points raised by respondent we are satisfied with the disposition made by the District Court and we adopt the following portions of the opinion by Mr. Justice Roth, sitting *pro tempore*, as a portion of the opinion of this court, with the addition of two inscrtions indicated by the punctuation:

''This is an appeal from that portion of an order approving an account in the above estate, which allows the claim of the Bible Institute of Los Angeles in the sum of $5,000, and overrules the objections of Frankie E. McConnell, appellant and contestant, wife of the deceased, to such claim.

''The claim is predicated on a promissory note in words and figures as follows:

'' 'Los Angeles, California, Dec. 6th, 1927

'' 'For value *received* I here *by* instruct the administrator or executor of my estate to pay to J. M. Irvine or order the sum of Five thousand Dollars within six months from date of my death.

'' '(Signed)   LEE A. McCONNELL,
'' '1701 North Ogden Drive
'' 'Hollywood, Calif.

" 'The above note is payment of service and advice rendered for a period of 15 years.  Dec. 6th, 1927.

" 'LEE A. McCONNELL

" 'Without recourse, I hereby assign and transfer the within note to the Bible Institute of Los Angeles, (a Religious corporation).

" 'Dated January 9th, 1928.

" '(Signed)  J. M. IRVINE.'

"The sole question presented on this appeal is whether J. M. Irvine, the payee named in the note and assignor of the claim herein, gave valuable consideration for the note, or whether the deceased, the maker of the note, attempted to make a gift thereof.  ▆ It is admitted that the Bible Institute gave no consideration for the note.  It, therefore, stands in the shoes of the payee and assignor.

▆ "It is settled that the gift of a promissory note, either *inter vivos* or *causa mortis,* cannot create an obligation in favor of the donee against the estate of the donor.  (*Coon* v. *Shry,* 209 Cal. 612 [289 Pac. 815] ; *Tracy* v. *Alvord,* 118 Cal. 654 [50 Pac. 757] ; *Wisler* v. *Tomb,* 169 Cal. 382 [146 Pac. 876] ; *Hironymous* v. *Hiatt,* 52 Cal. App. 727 [199 Pac. 850].)

"The evidence shows without dispute that Irvine and deceased had been in partnership approximately 12 years beginning in 1906 and ending in 1918, on which latter date the partnership was terminated, and the assets thereof equally divided" and their accounts as partners settled.  "During the existence of the partnership, because of illnesses of and certain trips made by deceased, Irvine put in more time on partnership affairs than did the deceased.  This fact was not taken into account at the time the partnership affairs were settled in 1918, nor did the articles of copartnership provide for extra compensation to either of the partners for extra or unusual services rendered to the partnership.  After the dissolution of the partnership, both men continued what appeared to be a cordial social relationship.  It appears that Irvine on at least two occasions advised deceased with reference to things that deceased was doing or had in contemplation for the Bible Institute.  The evidence on this phase of the matter is vague and unsatisfactory.  There is, however, no evidence that Irvine expected to be paid, or that the deceased expected to pay for such advice.  Further, the circumstances under

which the note was given, as hereinafter detailed, do not remotely suggest that the note was given in consideration for such advice. The note in question appears to have been executed on the date it bears, December 6, 1927, which was approximately nine years after the actual and legal termination of the partnership which had existed between the two men. At that time the following conversation took place, according to the uncontradicted testimony of Irvine:

" 'He said to me that he had made a new will and that in place of specifying the amount of five thousand dollars to be paid to me out of his estate, that he had given me this estate note in its place; that he felt it would be a more satisfying thing to have, that there would be less possibility of its being contested; and he said also that he was placing this endorsement on the note so that there would be no question as to its validity. . . . He said that he recognized the fact that he was under obligations to me, and for that reason he had in *one or more wills preceding this date,* remembered me in his will for the amount of five thousand dollars, but that he was changing the will now and placing it in this form.' (Italics ours.)

"Irvine further testified showing the nature of the services rendered as follows: 'I don't recall that there was anything very definitely stated on that line, Mr. Newby. He recognized the fact that during his European trip I had been under a very severe strain, due to the sudden. death of my mother, and sudden collapse of my sister, and the responsibility for her care on my shoulders, and the entire business affairs; and it happened to be an active period in the business; and one remark—when he returned, was that he felt he had better remain away, because the business prospered more during his absence than when he was present. I recollect that distinctly. Q. And in which he informed you that he felt that he was indebted to you for the extra services you had rendered? A. He so stated. . . . A. The entire business of the copartnership was in my hands during the latter years of the partnership, except that Mr. McConnell would take some interest in negotiating a real estate loan, or if a sale of property was in progress, he would take some interest in that; but so far as the management of the properties under our control was concerned, and the matter of insurance and the question of rents, and all of those details of the office,

he had nothing whatever to do with it, and refused to discuss them with anyone in the office, referring them in every case to me.'

''All of the services above referred to were rendered during the existence of the partnership,'' the affairs of which had been settled and adjusted between them, ''and it was undisputed that the partnership agreement which existed between the two men required each to render equal services. It is also undisputed that in previous wills, which had been executed prior to the execution of the note in question by deceased, the deceased had provided a legacy of $5,000 for Irvine. While it is true that there is vague testimony which shows that Irvine gave advice to the deceased after the dissolution of the copartnership on two occasions concerning matters the deceased had in contemplation for Bible Institute, there is no showing of any circumstances which would have enabled Irvine to state a cause of action for the reasonable value of said advice, if he had been so inclined, and the foregoing excerpts from Irvine's testimony demonstrate that the 'service and advice rendered for a period of 15 years' recited in the note refers to service and advice rendered during the existence of the partnership between the two men. This conclusion is strengthened further by the admitted fact that the deceased, prior to delivery of the note here in question, had remembered Irvine 'in one or more wills preceding . . . date' of the note. ▇▇ It is settled that one partner is entitled to no more compensation than another, in the absence of an agreement to the contrary. (*Cook* v. *Bryson,* 89 Cal. App. 445 [265 Pac. 289]; *Nevills* v. *Moore Min. Co.,* 135 Cal. 561 [67 Pac. 1054]; *Wright* v. *Robinson,* 51 Cal. App. 461 [197 Pac. 149].) In view of the fact that the partnership affairs were settled in 1918 and no provision made for the extra services rendered by Irvine, and the further fact that the agreement of partnership called for no extra or special compensation for extra or special services rendered by the partners, it cannot be said that the execution of the note in 1927 was in payment of a legal claim. (*Osment* v. *McElrath,* 68 Cal. 466 [9 Pac. 731, 58 Am. Rep. 17].) ▇▇ The execution of the prior wills providing for a legacy does not, in the absence of an agreement so to do, supported by valuable consideration, create any vested right. (*Nichols* v. *Emery,* 109 Cal. 323 [41 Pac. 1089, 50 Am.

St. Rep. 43]; *Tennant* v. *John Tennant Memorial Home*,
167 Cal. 570 [140 Pac. 242]; *Estate of Berger*, 198 Cal. 103
[243 Pac. 862]; *Cohn* v. *Klein*, 209 Cal. 421 [287 Pac. 459].)

. . . . . . . . . . . . .

■ "Respondent contends that even though there is no
valuable consideration for the note in question, that there
is such a moral consideration or obligation as will support
a contract within the meaning of section 1606 of the Civil
Code. Said section is as follows: 'An existing legal obli-
gation resting upon the promisor, or a moral obligation
originating in some benefit conferred upon the promisor, or
prejudice suffered by the promisee, is also a good considera-
tion for a promise, to an extent corresponding with the extent
of the obligation, but no further or otherwise.'

"It is true that in some states a moral, as distinguished
from a legal consideration, will under some circumstances
be sufficient to form a valid and binding contract (*Rask* v.
*Norman*, 141 Minn. 198 [169 N. W. 704, 17 A. L. R. 1299]),
but such has never been the rule in this state. California
cases have construed said code section to mean that 'a moral
obligation is sufficient to support an express promise, where
a good and valuable consideration has once existed'. (6
Cal. Jur. 181, sec. 124; *Sullivan* v. *Sullivan*, 99 Cal. 187
[33 Pac. 862]; *Peek* v. *Peek*, 77 Cal. 106 [19 Pac. 227, 11 Am.
St. Rep. 244, 1 L. R. A. 185]; *McCormick* v. *Brown*, 36 Cal.
180 [95 Am. Dec. 170]; *Southern Pacific Co.* v. *Prosser*, 122
Cal. 413 [52 Pac. 836, 55 Pac. 145]; *Bickerdike* v. *State*, 144
Cal. 681 [78 Pac. 270]; *Pacific Rys. Adv. Co.* v. *Carr*, 29 Cal.
App. 722 [157 Pac. 529]; *Royer* v. *Kelley*, 174 Cal. 70 [161
Pac. 1148]; 13 Cor. Jur. 360.)

"The uncontradicted evidence in this case demonstrates
that Irvine, conceding that he performed more services than
did the deceased for the partnership which existed between
himself and deceased, never had a legal claim for extra
compensation for such services against the partnership or
against the deceased. If Irvine had had such a legal claim
and the statute of limitations had run against the same,
then a subsequent written promise in the form of a promissory
note, or in any form, by deceased to pay $5,000 would be
binding, whether it arose 'upon the fact that the debtor has
received and the creditor parted with the consideration for
the debt, that it has never been in fact paid, and that *in*

*foro conscientiae,* it ought to be paid, notwithstanding the bar' (6 Cal. Jur. 182); or, because a debt once incurred is always a debt until paid or discharged. The law may and does permit a debtor to prevent collection of a debt by a plea of the statute of limitations or by bankruptcy, but there is no requirement of the law that a debtor shall insist upon such benefits; and there is no doubt that they may be waived. There is no evidence in this case which shows that the assignor of respondent Bible Institute ever had a legal claim. It follows that there was no occasion for the alleged debtor to waive anything. The fact that an instrument was executed which would have amounted to a waiver or a renewed promise if a legal debt had existed, cannot create a debt, when none in fact existed.''

The respondent relies upon the presumption of consideration arising from the written instrument (Code Civ. Proc., sec. 1963, subd. 21) as creating a conflict with the testimony of Irvine sufficient to support the implied finding of consideration. It insists that Irvine having been called by the appellant, the presumption in favor of the respondent creates a conflict with his testimony. (*Smellie* v. *Southern Pac. Co.,* 212 Cal. 540 [299 Pac. 529].) While this case does not come squarely within the rule that a fact is proved against a presumption and causes it to disappear when it is established by the uncontradicted testimony of the party himself or of his witnesses (*Mar Shee* v. *Maryland Assur. Corp.,* 190 Cal. 1 [210 Pac. 269]), nevertheless, under the peculiar facts here, it is apparent that the witness Irvine, the original payee and respondent's assignor, although called by the appellant, was in reality so closely identified with the respondent that, as against the uncontradicted and unimpeached testimony, a contrary presumption in favor of the respondent cannot be given any weight. ▮ The respondent, having paid no consideration to Irvine on the transfer of the note, is his assignee and as such whatever rights it has are wholly dependent upon the rights of Irvine. As such assignee it stands in the shoes of its assignor. Irvine was the only witness. His testimony summarized above conclusively established that the note was unsupported by consideration. ▮ Under such circumstances we must hold that when the testimony of the payee of a note conclusively establishes that no consideration was given for the note, the

presumption that it is supported by consideration, so far as the payee and his assignees are concerned, disappears from the case.

That portion of the order appealed from which approves the allowance of the claim on the Irvine note is reversed.

Rehearing denied.