[Civ. No. 20752. Second Dist., Div. Three. June 24, 1955.]

WILLIAM F. DUGAN, Appellant, v. JOHN E. PETTI-JOHN, as Administrator, etc., Respondent.

134

Alden F. Houck for Appellant.

Potter & Rouse and Bernard Potter for Respondent.

ASHBURN, J. pro tem*—Plaintiff Dugan sues John E. Pettijohn as administrator of the estate of Louis Luckel, deceased, upon a promissory note made by Luckel on February 9, 1950, payable to order of plaintiff on September 1, 1950, in the sum of $24,000. From a judgment for defendant plaintiff appeals. The case was tried without a jury. It appeared at the trial that plaintiff and Luckel, at the time the note was made and delivered, were engaged in a joint venture of operating the Noah Beery Paradise Trout Club located in the mountains near Palmdale. Luckel owned the land and the original arrangement was a 20-year lease to Dugan who was to bear all expenses and pay Luckel as rent one half of any net profits. Then a partnership was formed for operation of the trout club, the members being Dugan, Luckel and one Reitzler. It was soon dissolved and thenceforth Dugan and Luckel operated the enterprise as a joint venture.

After Luckel's death (on May 3, 1952) plaintiff filed a claim against his estate based upon the note, same was rejected, and he then brought suit upon the note. At the trial it developed that the note was given "as collateral security to protect plaintiff for moneys he had laid out in the past and was obligated to lay out, plus what he might have to lay

*Assigned by Chairman of Judicial Council.

out in the future, in connection with a joint venture between plaintiff and Louis Luckel, deceased, whereby they were attempting to promote what is known as the Noah Beery Paradise Trout Club.'' And the court held, among other things, that ''plaintiff could not legally file a claim based upon the Promissory Note aforesaid because of the fact that said note was given merely as security, as set forth in Paragraph III of these findings; that plaintiff could have filed a claim for any indebtedness of Louis Luckel to him arising from said joint venture, supported by the note as collateral security, which he failed to do, and the time for filing a claim against said estate has expired, and the court further finds that there can be no recovery on said Promissory Note.''

Appellant assails this finding, or conclusion, as erroneous, relying primarily upon *Thompson* v. *Koeller,* 183 Cal. 476 480 [191 P. 927], wherein the court said: ''The plaintiff proved the note, which was overdue by its terms, and that nothing had been paid on it. By so doing he made out a *prima facie* case. The defendants did not deny this or controvert it in any way. They showed merely that payment of the note was conditional because it had been given and accepted as security. This was a good defense, unless there had been a default in the obligation secured, and even then was a good defense except to the extent of such default. The plaintiff then by way of proper replication to this defense showed that a default on the principal obligation had in fact taken place, and to an extent in excess of that sought to be recovered on the security. The effect of this proof was to show, not that the plaintiff was entitled to recover on a different cause of action from that pleaded in his complaint, but that the defense which the defendants pleaded was not a good defense, that the contingency upon which the defendants were liable upon the note sued upon had in fact occurred.'' The court held not only that there was no variance between pleading and proof, but also that the claim against the decedent's estate was not defective because confined to the note without mention of the principal obligation it secured. Appellant also relies upon the liberal rule concerning claims against estates which is established by *Tabata* v. *Murane,* 24 Cal.2d 221, 231 [148 P.2d 605] wherein some nine previous decisions are overruled. But this contention of appellant, though apparently well founded, requires no further consideration because it appears that, regardless of this point, he cannot recover.

Findings III and IV are now quoted in full: ''III That

the consideration for the signing of said Note was as collateral security to protect plaintiff for moneys he had laid out in the past and was obligated to lay out, plus what he might have to lay out in the future, in connection with a joint venture between plaintiff and Louis Luckel, deceased, whereby they were attempting to promote what is known as the Noah Beery Paradise Trout Club.

"IV That plaintiff paid out certain money in promoting said venture, the amount of which was not definitely shown by the evidence; that the said Louis Luckel advanced or paid out at least an equal amount on behalf of said venture, and the court further finds that there was no obligation on the part of plaintiff or Louis Luckel, deceased, to repay the other for any moneys so advanced or paid by either of them."

And finding VI: "In view of the above findings, it is unnecessary to find whether the allegations set forth in answer on file herein are true or untrue except that the court finds there was no consideration for the execution of said Note as hereinabove set forth in Paragraph III of these findings."

These findings of want of consideration are not challenged by appellant in either of his briefs. No point is made with reference to them. They are indirectly questioned, however, in arguing anther point and to that matter reference will be made.

The evidence amply sustains the quoted findings and the court correctly concluded that, as matter of law, there was no consideration for the note. ■ For, in the absence of an agreement so to do, there is no obligation on the part of one joint venturer to protect the other from loss of investment or to personally reimburse him for advances made in the conduct of the joint business. This statement refers to an existing venture as to which the rights and obligations of the members have become fixed, by express agreement or implication of law, before any promise is made by one of them to protect the other from loss or to reimburse him for advances.

■ Primarily plaintiff contributed services and Mr. Luckel property to the venture. The rule is settled that in such a venture, in the absence of an express agreement on the subject, the one who contributed only services cannot upon dissolution recover from the coventurer any compensation for same and that the one who has contributed capital must bear his own loss if the assets are insufficient to return his investment in full. 48 Corpus Juris Secundum, section 11, page 839: "Where,

however, one member has supplied money and the other labor, it has been held that neither member is liable to the other for contribution for any loss sustained.'' See also *Bowling* v. *Duvall,* 270 Ky. 494 [109 S.W.2d 1200, 1201] ; *Heran* v. *Hall,* 1 B. Mon. (Ky.) 159 [35 Am.Dec. 178] ; *Meadows* v. *Mocquot,* 110 Ky. 220 [61 S.W. 28] ; *Tiffany* v. *Short,* 22 Cal.2d 531, 533 [139 P.2d 939] ; 30 Am. Jur. § 53, p. 705 ; 48 C.J.S. § 9, p. 836 ; 48 C.J.S., § 6, p. 830.

It also appears that plaintiff made some cash advances to the enterprise as did Mr. Luckel. Finding IV upon this subject says that the amount of moneys advanced by plaintiff ''was not definitely shown by the evidence'' and that Luckel ''advanced or paid out at least an equal amount on behalf of said venture.'' But plaintiff would have no claim on Luckel for reimbursement or contribution if perchance he had advanced more than his share of necessary expenses. (*Simpson* v. *Fulcher,* (Tex.Civ.App.) 45 S.W.2d 1012, 1014; *Baker* v. *Safe Deposit & Trust Co.,* 90 Md. 744 [45 A. 1028, 1029-1030, 78 Am. St. Rep. 463] ; L.R.A. 1917E, pp. 877, 879, annotation ; 48 C.J.S. § 10, pp. 836-837.)

A mere moral obligation is sufficient to support an express promise only where a good and valuable consideration once existed, but not where there was no prior legal obligation. (12 Cal.Jur.2d, § 39, p. 236 ; *Foltz* v. *First Trust & Sav. Bank,* 86 Cal.App.2d 59, 62 [194 P.2d 135] ; *Dow* v. *River Farms Co.,* 110 Cal.App.2d 403, 408 [243 P.2d 95] ; *Estate of McConnell,* 6 Cal.2d 493 [58 P.2d 639].) The last cited case is well summarized in the Dow opinion at page 409, viz.: ''In *Estate of McConnell,* 6 Cal.2d 493 [58 P.2d 639], X and Y had been partners for many years. X had devoted more time to the partnership affairs than had Y because of the latter's sickness. The partnership was dissolved, each sharing equally. Thereafter, X gave Y occasional beneficial business advice. Several years later Y gave X a $5,000 note in payment for these past services. There was no evidence that when these services were rendered Y expected to pay for them, or that X expected to be paid. The promise was held to be unenforceable, the court stating (p. 498) : 'It is true that in some states a moral, as distinguished from a legal consideration, will under some circumstances be sufficient to form a valid and binding contract [citing a Minn. case], but such has never been the rule in this state. California cases have construed said code section [Civ. Code, § 1606] to mean that ''a moral obligation is sufficient to support an express promise, where a good and valuable

consideration has once existed.'' [Citing seven cases and two encyclopedias.] (See cases collected 6 Cal. Jur. p. 181, § 124.)' '' Nor is a past consideration sufficient to support a contract. (*Simmons* v. *California Institute of Technology*, 34 Cal.2d 264, 272 [209 P.2d 581] ; *Dow* v. *River Farms Co.*, 110 Cal.App.2d 403 [243 P.2d 95].)

Appellant's counsel argues that plaintiff told Luckel shortly before the note was given that the club was a failure and he had decided to quit; that Luckel offered and gave him the note (to secure him against any loss) as an inducement to continue in the venture and devote his time to it. This appears to have been a venture for an undefined term and hence terminable at will (*Harris* v. *Hirschfeld*, 13 Cal.App.2d 204, 206 [56 P.2d 1252]) and an acceptance of such an offer would constitute valid consideration for the note,—i.e. abandonment of right and intention to terminate and agreement to continue to render personal services to the enterprise.

There is some testimony of plaintiff which would support this claim of a new consideration. But there is a considerable amount emanating from the same witness which supports a contrary finding. Exemplified by the following extracts. ''Q. You don't have any distinct recollection—do you have any recollection of any conversation between you and Mr. Luckel at the time he gave you the note? A. No, except that he said 'Here is the note, it will take care of you.' Q. Did he give any reason for why he dated the note September 1, 1950? A. Well, for the simple reason that it was the outcome of talking about giving a note to me that brought the idea out that we could give notes to our creditors and thereby get by until the end of the season of 1950. Q. Did he give you any reason why he made that note come due on September 1, 1950? A. No, except that it was given at the same time all the others were. Q. Did you ask him why that came due on September 1, 1950? A. No, I did not, I just accepted it as, well, to take the place of something that he wanted to do for me, that is all.'' Also, '' 'Did you at any time subsequent to the giving and delivery of this $24,000.00 note to you state to anyone that the consideration for the giving of that note was for protection and investment? A. Yes, I have already stated that. Q. That was the consideration? A. Yes. Q. What did you mean by 'protection and investment'? A. Well, he said he wanted to sell [will] me the whole place. I said that I didn't want to accept that. Then he said, 'We will, then, pay for your time and everything you have done—what you have done—and the way you have

treated me. I will give you that note.' Q. What was the meaning of the word 'investment' there. I can understand the word 'protection' but what was meant by 'investment'? A. Oh, the investment was owed to me before I signed the lease.' '' Letter of September 6, 1950, from plaintiff to Luckel says in part: '' 'Your note came due on the first as I guess you remember. I still can't fathom out why you gave me this note in such a large amount instead of simply giving me a paper stating that we are partners in this venture and no minimum rental is due you under the terms of the lease.' '' Further testimony: ''A. No, it was not to pay for any labor. That note was to repay me for the monies that I had given him personally, and for the time and the efforts that I had put in there; and also to reimburse me for money I had lost by reason of the foreclosure of that mortgage, which tied my hands.''

The court did not specifically find upon the alleged giving of the note as inducement to stay with the venture. But the contrary is implicit in findings III, IV, and VI, quoted *supra*. It seems apparent that a specific finding on this matter would have gone against plaintiff. ██ '' 'Where an omitted finding must be inferred from a consideration of the findings actually made, an appellate court will recognize the necessary inference and consider the finding in question as having in effect been made (citing cases).' (*Schultz* v. *Los Angeles Dons, Inc.*, 107 Cal.App.2d 718, 725 [238 P.2d 73].) ██ Plaintiff cannot successfully complain of the court's failure to find on this issue when, in the light of the evidence and the reasonable inferences therefrom, the facts actually found and the judgment ordered, the finding would have been adverse to him. (*Walpole* v. *Prefab Mfg. Co.*, 103 Cal.App.2d 472, 481 [230 P.2d 36].)'' (*Logan* v. *Forster*, 114 Cal.App.2d 587, 596 [250 P.2d 730].)

The finding of want of consideration is supported by adequate evidence and pertinent legal principles; it is determinative of the merits of this appeal.

Judgment affirmed.

Shinn, P. J., and Vallée, J., concurred.