Alan N. EDWARDS, Plaintiff
and Appellant,

v.

Hayden THOMPSON, Defendant
and Appellee.

Civ. No. 10398.

Supreme Court of North Dakota.

July 14, 1983.

Eaton, Van de Streek & Ward, Minot, for plaintiff and appellant; argued by Jonathan C. Eaton, Jr., Minot.

Lundberg, Conmy, Nodland, Lucas & Schulz, Bismarck, for defendant and appellee; argued by Patrick A. Conmy, Bismarck.

ERICKSTAD, Chief Justice.

The facts relevant to this appeal are not in dispute and thus can be briefly summarized. On April 8, 1974, Edwards and Thompson entered into two joint-venture agreements whereby Thompson was to fur-

nish approximately 400 [1] head of Simmental, one-half blood, cattle and Edwards was to breed and care for these cattle until they could be sold as bred heifers. Edwards purchased 60 of these heifers from Thompson as his original capital contribution to the venture. As the venture continued, Edwards contributed additional cattle to the jointly owned herd. According to the parties' written agreements, any profits [2] derived from this business venture were to be shared equally.

In March, 1975, the parties purchased a prospective calf insurance policy. Thereafter, a number of the unborn calves died and, consequently, Thompson received an insurance proceeds payment of $561,000. Edwards then brought an action alleging that he was entitled to 43 percent of the insurance proceeds. In response, Thompson contended that Edwards' share of the proceeds was a mere 12 percent. Thompson also affirmatively asserted nine separate counterclaims.

The insurance phase of the case was severed and tried separately from Thompson's various counterclaims. With respect to the insurance proceeds, the trial court determined that Edwards' ownership [3] interest in the herd was 38 percent and accordingly he was entitled to 38 percent of the insurance proceeds. The trial court also held that any losses sustained in the joint venture were to be shared equally, in the same manner as profits derived from the venture.

The trial court appointed a referee to adjudicate and render an accounting with regard to Thompson's multiple counterclaims. On May 5, 1982, the referee filed his report. Subsequent thereto, on September 30, 1982, the court held a hearing to consider the parties' exceptions to the referee's report. Thereafter, the parties' exceptions were denied and on November 20, 1982, the court adopted the referee's report as his findings of fact and conclusions of law with regard to Thompson's counterclaims. Rule 52(a), N.D.R.Civ.P. A judgment [4] dated December 22, 1982, was entered in accordance therewith from which Edwards now appeals. For the reasons hereinafter stated, we affirm in part, reverse in part, and remand for modification consistent with this opinion.

The first and foremost issue to be determined on appeal is:

Whether or not the trial court erred in failing to consider the insurance proceeds as profits derived from the joint venture which should be divided equally in accordance with the parties' joint venture agreements.

In their pleadings and subsequent arguments, both parties unequivocally asserted that the insurance monies should be divided in accordance with each party's capital contribution to the joint venture. Edwards alleged a 43 percent ownership interest in the herd; however, Thompson argued that Edwards' capital contribution was a mere 12 percent. The trial court divided the insurance proceeds on the basis of what the court determined to be the parties' respective contributions to the capital of the joint venture.

In his exceptions to the referee's report, Edwards argued that the insurance proceeds constitute income derived from the joint venture and, accordingly, should be allocated 50/50 in accordance with the par-

1. Thompson actually delivered 499 heifers to Edwards.

2. Under the parties' contractual agreements, profits equalled sales price less the following enumerated expenses: 1) inventory cost per head; 2) interest at eight percent; 3) breeder's cost; 4) semen cost; and 5) feed cost.

3. Edwards' ownership interest was based upon the number of one-half blood Simmental cattle he ultimately contributed to the jointly owned herd.

4. "That defendant Hayden Thompson have judgment against the defendant [plaintiff] Alan N. Edwards for the sum of $203,322.41, of which judgment amount, the funds on deposit with the Clerk of District Court of McHenry County in the sum of $195,713.52, as of the 30th day of September, 1982, shall be credited against such total, leaving a net judgment amount in favor of defendant Hayden Thompson other than those on deposit, against the plaintiff Alan N. Edwards, in the sum of $7,508.88."

ties' joint-venture agreements. By making this argument, Edwards was, in essence, asking the trial court for permission to amend his complaint.

■ Under Rule 15(a), N.D.R.Civ.P., "a party may amend his pleading only by leave of court." The leave referred to "shall be freely given when justice so requires." Thus, a trial court's decision with regard to whether or not the parties should be permitted to amend their pleadings is discretionary in nature and, accordingly, will not be disturbed on appeal in the absence of an abuse of discretion. *Powers v. Martinson,* 313 N.W.2d 720, 732 (N.D.1981); *Bender v. Time Ins. Co.,* 286 N.W.2d 489, 491 (N.D. 1979); *Vasichek v. Thorsen,* 271 N.W.2d 555, 562 (N.D.1978).

■ Where Edwards' complaint and ensuing argument to the trial court was that the insurance proceeds should be allocated according to each party's capital contribution to the jointly owned herd, the trial court did not abuse its discretion by refusing to allow Edwards to revamp his theory of recovery.[5] In fact, if the trial court had allowed Edwards to replead his case subsequent to the court's decision on the basis of the parties' original pleadings and argument, a manifest injustice could have resulted.

■ The remaining five issues raised by Edwards all involve factual determinations, albeit some involve mixed issues of fact and law. It is elementary that a trial court's "findings of fact shall not be set aside unless clearly erroneous." Rule 52(a), N.D.R.Civ.P. The legal principles governing the application of Rule 52(a) are not in dispute. A finding is clearly erroneous only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Wilhelm v. Berger,* 297 N.W.2d

776, 779 (N.D.1980); *Alumni Association of University v. Hart Agency, Inc.,* 283 N.W.2d 119, 121 (N.D.1979); *Schmidt v. Plains Elec., Inc.,* 281 N.W.2d 794, 798 (N.D. 1979). That we may have viewed the facts differently if we had been the initial trier of the case does not entitle us to reverse the lower court. *United States v. National Ass'n. of Real Estate Boards,* 339 U.S. 485, 495–96, 70 S.Ct. 711, 717, 94 L.Ed. 1007 (1950); *Nee v. Linwood Securities Co.,* 174 F.2d 434, 437 (8th Cir.1949); *Schmidt v. Plains Elec., Inc., supra,* 281 N.W.2d at 798. Our function is not to decide factual issues de novo. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969); *In re Estate of Elmer,* 210 N.W.2d 815, 820 (N.D. 1973).

The second question to be resolved on appeal can be best summarized thusly:

> Whether or not the trial court was clearly erroneous in determining that the evidence proffered by Edwards failed to substantiate his assertion that the parties' actions indicate that they implicitly agreed to apportion any losses sustained in the Simmental cattle joint venture in accordance with each party's capital contribution to the joint venture.

Specifically, Edwards contends that he is not required to contribute toward any capital losses sustained by his co-venturer, Thompson. The rationale underlying Edwards' contention is that Thompson sold a number of joint-venture cattle prior to the termination date of the joint venture and did not at that time ask Edwards to contribute toward the losses sustained by Thompson in such sales. Therefore, Edwards reasons Thompson implicitly recognized that Edwards was not obligated to share equally in any losses sustained in the joint venture.

■ Edwards' argument is, in essence, premised on the theory that Thompson sus-

---

**5.** In his complaint, Edwards alleges that he is entitled to 43 percent of the insurance proceeds based on his contribution to the capital of the joint venture. However, on appeal, he con-
tends that the insurance proceeds constitute income and, accordingly, he is entitled to 50 percent of such monies.

tained a loss with regard to the sales in question. Nevertheless, he has failed to factually substantiate with references to the record his allegation that Thompson actually incurred a loss. Furthermore, in the absence of evidence to the contrary, the appropriate time to determine whether or not a joint venture is unprofitable and thus requires one of the venturers to contribute toward the capital losses sustained by his co-venturer is at the venture's conclusion, not at the time each and every joint-venture sale is consummated. Hence, Thompson's failure to ask Edwards to share in the losses sustained, if any, prior to the venture's termination date, is irrelevant and does not prove that the parties agreed to share any losses sustained in the Simmental cattle joint venture on a basis different from the 50/50 division of profits.[6]

In accordance therewith, we conclude the trial court properly determined that:

> In the absence of an agreement to the contrary, joint venturers are presumed to bear any losses sustained in the venture on the same basis as the profits are divided.[7] *Hilde v. Flood,* 81 S.D. 25, 33, 130

285 P.2d 339, 342 (1955); *Bowling v. Duvall,* 270 Ky. 494, 495, 109 S.W.2d 1200, 1201 (1937).

Nevertheless, the referee's report indicates that Edwards submitted a claim for compensation for the services he performed in connection with the Simmental cattle operation. Specifically, Edwards claimed that he was entitled to the following: (1) two hours per day at $10.00 per hour for the period of time the cattle were in North Dakota, and (2) $12,000 for the period of time the cattle were in Minnesota. By submitting this claim, it is evident that Edwards considered his services to be a joint-venture expense, not a capital contribution. In addition, in his exceptions to the referee's report, Edwards did not specifically contend that his services constituted a capital contribution and, if so, considered that his contribution of both money and labor was equal to Thompson's capital contribution.

Hence, the specific questions of whether or not the parties considered Edwards' time and labor to be a capital contribution, and, if so, whether or not the parties considered Edwards' capital contribution of both money and services to be equivalent to Thompson's financial contribution were never adequately developed and presented to either the referee or the trial court for consideration. It is elementary that the purpose of an appeal is to review the trial court's actions not to allow an appellant to develop and expound upon new strategies or theories. *Mattis v. Mattis,* 274 N.W.2d 201, 204 (N.D.1979). Accordingly, the issues raised by *Kovacik* and similar case authority are not properly before this court.

7. Generally, the legal principles applicable to partnerships also apply to joint ventures. *Jensen v. Schreck,* 275 N.W.2d 374, 378 (Iowa 1979); *Horn's Crane Service v. Prior,* 182 Neb. 94, 152 N.W.2d 421, 424 (1967); *Riteway Carriers, Inc. v. Schue,* 248 Minn. 299, 302, 79 N.W.2d 505, 507 (1956). In North Dakota, the prevailing law with regard to a partner's liability to contribute toward any losses sustained by

6. Edwards also contends that he is not liable to Thompson for any capital losses sustained in the joint venture because the parties' respective capital contributions were equal. Specifically, Edwards reasons that since profits derived from the joint venture were to be split 50/50, the parties must have considered Edwards' capital contribution of both money and labor to be equivalent to Thompson's monetary contribution. And, in accordance therewith, he urges us to determine that Thompson, the party who contributed money, is not entitled to be reimbursed for his loss from Edwards, the party who contributed mostly services.

The theory relied upon by Edwards is aptly summarized by the California Supreme Court in *Kovacik v. Reed:*

"Where, however, as in the present case, one partner or joint adventurer contributes the money capital as against the other's skill and labor, all the cases cited, and which our research has discovered, hold that neither party is liable to the other for contribution for any loss sustained. Thus, upon loss of the money the party who contributed it is not entitled to recover any part of it from the party who contributed only services. [Citations omitted.] The rationale of this rule . . . is that where one party contributes money and the other contributes services, then in the event of a loss each would lose his own capital—the one his money and the other his labor. Another view would be that in such a situation the parties have, by their agreement to share equally in profits, agreed that the value of their contributions—the money on the one hand and the labor on the other— were likewise equal; it would follow that upon the loss, as here, of both money and labor, the parties have shared equally in the losses." 49 Cal.2d 166, 169–170, 315 P.2d 314, 316 (1957). *See also, Allison v. Dilsaver,* 387 S.W.2d 206, 213 (Mo.App.1965); *Boxwell v. Champagne,* 229 Miss. 355, 366, 91 So.2d 256, 261 (1956); *Dugan v. Pettijohn,* 134 Cal.App.2d 133, 136,

N.W.2d 100, 104 (1964); 48A C.J.S., Joint Ventures, § 39.

Applying this general rule to the case at bar, Edwards would be responsible for fifty percent of the losses sustained in the venture.

■ Edwards next contends that the referee's final accounting with regard to the Simmental cattle joint venture is erroneous in two respects. First, he argues that the referee improperly determined that the assets Edwards received from the joint venture included 100 calves which were actually in Thompson's possession as of July 1, 1975, the termination date of the joint venture. Nevertheless, where Edwards ultimately obtained possession of the calves on approximately October 1, 1975, we believe that the trial court's finding, based upon the referee's report, that the assets Edwards received upon termination of the joint venture should include the calves in question, was not clearly erroneous.

■ Edwards' second contention is that the referee improperly accounted for the cattle sold by Thompson prior to the termination date of the joint venture. The referee treated these cattle as if they were on hand as of July 1, 1975, and, accordingly, assigned them a value as of that date. However, where Edwards did not offer any evidence indicating that the fair market value of these cattle at the time of their sale was greater than the value assigned to the cattle by the referee, Edwards has failed to prove that he has been prejudiced by the referee's actions. Accordingly, we are not left with a definite and firm conviction that a mistake has been made.

Edwards' remaining contentions relate to the referee's final accounting with regard to Thompson's claim for relief pursuant to an irrigation contract entered into between the parties. Under the parties' contractual agreement, Thompson was to install an irrigation system on Edwards' land and to pay a percentage of the expenses Edwards incurred in cultivating the land. In return, Thompson was to receive a percentage of the crop grown by Edwards on the irrigated land.

■ On appeal, Edwards argues that Thompson defaulted on his contractual obligation to pay a portion of Edwards' operating expenses and therefore the referee's finding that Thompson was entitled to recover a percentage of Edwards' crop less a percentage of Edwards' operating expenses was clearly erroneous. Nevertheless, where Thompson's claim for relief requested an accounting under the irrigation contract and for "payment of defendant's [Thompson's] crop share as determined by such accounting," and where the parties' contractual agreement clearly does not make Thompson's right to a percentage of Edwards' crop contingent upon his remitting a payment to Edwards for his percentage of the operating expenses,[8] the referee could

---

the partnership is quite clear: each partner "must contribute toward the losses, whether of capital or otherwise, sustained by the partnership according to his share in the profits." Section 45–07–01(1), N.D.C.C. Thus, according to the applicable rules governing partnerships, Edwards would be responsible for fifty percent of the losses incurred in the joint venture.

8.　　　　　"AGREEMENT"

"This agreement entered into this 30th day of January, 1974 between Hayden Thompson of Towner, North Dakota and Alan Edwards of Denbigh, North Dakota in regards to irrigation system constituting two units with a total acreage of approximately 460 acres.

　"1. Alan Edwards is to provide the land, initial seed of alfalfa, 15 ton of manure in the initial year, and commercial fertilizer at a rate of approximately $10.00 per acre.

　"2. Edwards is to prepare the seed bed.

　"3. Hayden Thompson shall purchase the irrigation equipment at an estimated cost of $80,000.00.

　"4. The share of the hay crop on the first four ton of yield will be sixty percent (60%) to Alan Edwards and forty percent (40%) to Hayden Thompson.

　"5. Hayden Thompson and Alan Edwards shall share in fertilizer and pumping costs at the 40%–60% level.

　"6. Alan Edwards shall be responsible for harvesting of the crop. He is also responsible for insect control and maintenance of the sprinkling equipment.

　"7. The share of the hay tonage over four ton per acre shall be twenty-five percent (25%) for Hayden Thompson and seventy-five percent (75%) for Alan Edwards.

reasonably have concluded that the unpaid expenses need merely be deducted from Thompson's share of the crop.

Edwards' last contention is that the referee erred in including a portion of the 1978 crop year in the final accounting he rendered with regard to the irrigation contract. Because both Thompson and Edwards agree that they had no contractual agreement for the 1978 crop year and Thompson conceded as early as February 24, 1978, that he had no interest in the irrigation system on Edwards' land, we believe the referee erroneously included a portion of the 1978 crop year in the final accounting for the irrigation contract.

Thus, in accordance with this opinion, we affirm the judgment except so much of it as relates to the referee's accounting with regard to the irrigation contract for the year 1978, and remand for appropriate modification.

VANDE WALLE, SAND, PEDERSON and PAULSON, JJ., concur.

"Entered as Exhibit A is the initial cost determination. In the event that the initial cost estimations are not correct, this contract may be amended at any time. An evaluation of cost shall be made seasonally.