WARNER, Judge.
The parties appeal and cross-appeal a final judgment arising out of their participation in the construction of a home for third parties. The trial court found that the parties had entered into a joint venture with respect to the home, but also found that later the appellant entered into a subcontracting agreement with appellee-Greenvale Investments, Inc., to be a construction supervisor for the firm. Appellant contends that these findings are inconsistent and appellees claim that the court erred in finding that a joint venture existed. Giving wide latitude to the trial court to resolve issues of fact, we affirm, except for the calculation of damages on the sub-contract claim.
The court had to sift through sharply conflicting evidence in this ease. Ultimately, the trial court found that the parties entered into a joint venture agreement to construct a home for third parties. Appellant, who had construction experience and whose home was built by appellees, interested Mr. and Mrs. Goldman in the construction of a new home. He called appellee-Fonseca, who is an officer and director of both corporate appellees, to meet with Mr. Goldman and appellant at his house to ascertain whether a deal could be put together. Appellant testified that at the time the parties agreed to work on the home together and to share the profits from constructing the house. Appellant met with the Goldmans and an architect to create the house plans, but the construction contract was with appellee-Greenvale Investments. Later, appellant contributed $20,000 in capital to the project. Mainly because of appellant’s capital contribution, the trial court found that a joint venture had been created. The court then determined the amount of net profit to be divided. We find no reversible error in the trial court’s conclusions. As we said, the evidence was conflicting, and to a large degree required a credibility determination as to who was telling the truth. We will not disturb the trial court’s finding on such evidence. Amjad Munim, M.D., P.A. v. Azar, 648 So.2d 145, 148-49 (Fla. 4th DCA 1994).
Pursuant to the counterclaim, the trial court also determined that shortly after the joint venture was formed, appellant became a construction supervisor for Greenvale Investments by signing a contract to supervise the homes it was constructing, which included the Goldman home. While appellant contested the validity of the subcontracting agreement, he admitted during his testimony that he did supervise the construction on the Goldman home during the time he worked for Greenvale Investments. For his services, appellant was paid a weekly draw amount. The written subcontract provided that he would be responsible for any defects in his work and would immediately remedy any defects. If appellant failed to do so, Green-vale could employ others to remedy the work and charge appellant. The documents reflecting costs of the construction on the Goldman home show that appellant’s compensation was considered part of the overhead of the appellees. The counterclaim alleged, and the trial court found, that in supervising the Goldman house, appellant made two errors, one in setting the slab for the guesthouse and another in the height of the privacy wall, requiring correction which cost $12,000. Therefore, the trial court entered judgment for appellee-Greenvale Investments in that amount.
Appellant claims that the findings of the trial court are inconsistent, as a joint venturer cannot be liable to the joint venture for ordinary negligence. Kartage v. Interocean, SA., 167 So.2d 76 (Fla. 3d DCA 1964). While this is true in the absence of an agreement to the contrary, it appears that the trial court determined that the subcontract was an independent agreement which expressly provided for additional compensation to appellant and made the appellant liable for damages in connection with the performance of his duties.
A joint venture agreement is controlled by the contract between the parties. Where the parties agree, one joint venturer may be *1390 compensated for work performed in connection with the project. See McDermott v. Strauss, 283 Ark. 444, 678 S.W.2d 334, 338-39 (1984); Dugan v. Pettijohn, 134 Cal. App.2d 133, 285 P.2d 339, 342 (1955); 46 Am.Jur.2d Joint Ventures § 25 (1994). Here, the trial court found that the parties entered into the subcontract. Therefore, the general rule advanced by appellant does not apply.
However, we find that the calculation of the loss under the subcontract was erroneous, when considered with the calculation of the amount due to appellant pursuant to the joint venture. In calculating the direct costs incurred by the joint venture for the construction of the house, the figures included the cost to correct the errors attributed to appellant. Therefore, in accounting for his share of the joint venture profits, appellant was already charged with half of the loss. In calculating the amount due to Greenvale Investments on the counterclaim, this amount should have been deducted from the amount owed. While Greenvale Investments claims that the amount of the damages to correct the errors was not supported by the evidence, we find no reversible error as again conflicting evidence was presented to the trial court concerning the costs to correct the problems.
We therefore affirm the judgment in all respects except as to the determination of damages on the counterclaim, which we reverse with directions to recalculate the net judgment in accordance with this opinion.
DELL, J., and KENNEY, SCOTT M., Associate Judge, concur.